Bracht *v.* Connell et al., Appellants.

398

Argued September 27, 1933.   Before FRAZER, C. J.,
SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN,
JJ.

*Frank J. Thomas* and *Albert L. Thomas,* for appellants.

*Alexander B. Jobson,* with him *Edmond C. Breene,* for appellee.

OPINION BY MR. JUSTICE KEPHART, December 8, 1933:
Appellants, Connell and Laub, and appellee, Bracht,
in 1921 associated themselves by parol agreement as

general partners under the firm name of Connell, Laub & Bracht, for the purpose of carrying on a road construction business. Between 1922 and 1925, contracts involving more than two million dollars were obtained and completed in Pennsylvania, and much work was done in other places. In the year 1925, contracts involving more than $650,000 were procured in the name of and completed by the partnership.

In the early part of 1925, appellants and appellee began to draw apart—differences arose; it was more difficult to secure common effort. Questions as to whether bids were to be made in the name of the partnership or for the advantage of a single partner were raised. The partnership had become irksome.

About August 1, 1925, appellants, without the knowledge of appellee, but with the use of firm funds, bid upon and obtained a large contract in West Virginia for building a hard surfaced road. When appellee learned of this, he insisted that it belonged to the partnership, but appellants refused him any participation therein. On August 10, 1925, after a conference, the partnership theretofore existing was dissolved by verbal notice from appellants to appellee. Appellants wanted a division of the partnership equipment and assests, and the next day the partners met and divided all the equipment among themselves except that necessary to complete other jobs (Clarion and Crawford Counties) then under contract. Later the equipment used there was divided, but at no time was there a full distribution of other assets of the firm. Checks, however, were drawn on firm funds to then equalize the accounts, and it was agreed that as other funds came to hand, sufficient should be retained to meet any obligations arising out of the Clarion and Crawford County road contracts, and the balance should be divided equally among the partners. In this way some $30,000 belonging to the partnership was procured by appellee, and not divided though de-

posited in the name of the former partnership and for its benefit.

Appellants, from and after August 10th, proceeded to perform the contract for the construction of the road in West Virginia. Their consistent refusal to permit appellee to have any part in the work or the prospective profit to be realized, precipitated the present controversy. On appellee's bill for accounting the chancellor decreed that the West Virginia contract was an asset of the old partnership and appellee was entitled to an accounting and a distribution of a proper proportion of any profits therefrom. An accounting was made of this and other contracts not settled prior to August 10th. The result being adverse to appellants, this appeal followed.

The Act of June 24, 1895, as amended by the Act of March 30, 1921, P. L. 60, does not prevent consideration of questions relating to the decree ordering an accounting because a party so ordered fails to appeal from that order but instead appeals from the final decree settling his accounts. The act reads: "An appeal to the Supreme Court or Superior Court......shall be allowed to any of the defendants or parties aggrieved, in the same manner as is allowed by law from final decrees and judgments......Provided, however, That such appeal must be taken within twenty (20) days after such order or decree or judgment has been entered......" The statute provides a remedy where none theretofore existed. The provisions are permissive, not mandatory; while an appeal formerly was not allowed, the statute permits, but does not require, an aggrieved party to accept the advantages therein given him. Such a party may still proceed, after the actual accounting, to raise questions concerning the order to account.

Judge PARKER, now of the Superior Court, heard the case, making the findings necessary for the order to account. The testimony amply sustains his conclusion that appellants and appellee were general partners in

the road construction business. While the partnership continued, in violation of its terms and without appellee's knowledge, appellants bid on and secured a contract to construct a road in West Virginia. After obtaining it, they terminated the partnership; whether because of prior trouble or in an effort to exclude appellee from its possible profits is immaterial. They endeavored to appropriate this contract, a partnership asset, to their own use, which of course they could not do. Appellee's bill was not instituted on the theory of a wrongful dissolution, for appellee had consented to the dissolution.

Partners stand in a fiduciary relationship to copartners; each is under a duty to act for the benefit of all and not to gain individual advantage at the expense or to the detriment of other partners: Partnership Act of March 26, 1915, P. L. 18, part 4, section 21. When a partnership has terminated, for whatever reason or by whatever means, the assets of the partnership must still be handled in accordance with this fiduciary principle.

Appellants considered the contract for the construction of the West Virginia road their own. They made it in good faith and the court below was unable to discover bad faith or fraudulent intent in their actions, and we concur in that finding. Appellants were led to the conclusion that they had a right to make this contract, by their conduct in other prior instances when they made similar contracts which had the apparent assent of appellee, though he denied knowing anything about them. Appellants were under the impression they might perform the West Virginia contract as their own. They were mistaken as to the legal aspect of their action in making this contract with the aid of partnership funds as Judge PARKER finds. The result is that the law imposes on the contract a partnership status at dissolution and gives appellee the right at dissolution either to have the contract distributed, that is, lawfully appraised, so that appellee could receive the value of his interest, or, appellee, being denied this, could require appellants to

account for his proportion of the profit. See Partnership Act, supra, section 42. When appellants took over the asset, i. e., the contract, they were using a property right of appellee. The section does not refer merely to physical property; it includes just such assets as this, or a leasehold as in McCollum v. Carlucci, 206 Pa. 312. We repeat, the action is not for breach of the partnership contract, but for the value of appellee's interest in that asset as it was administered by appellants who had wrongfully refused appellee any right therein. Appellants' authorities do not apply. Whether appellee's right is assessed as damages: the value of the contract at dissolution, or, as profits on an accounting for the administration of a partnership asset, the result is the same in this case because the value of the contract was determined when the contract was completed. The question of value was not then one for speculation. Appellee generally has the option of taking the right which is most beneficial.

Appellee urges that the old partnership status continued during the period appellants were engaged in constructing the West Virginia road. Appellants, after August 10th, were no longer partners of appellee. They were independent adventurers. Appellee's right, as he has stated, is not for breach of the partnership agreement, but is for an accounting of the administration of a partnership asset which had been wrongfully appropriated by appellants. While appellants used their own property, equipment and efforts in the performance of the contract, they were, however, dealing with a partnership asset; they must account to appellee for the value of his interest in that asset in the same manner as a liquidating or surviving partner accounts for unfinished work brought by him to completion after dissolution. With this distinction in mind, we consider generally some of the principles involved in the various assignments of error as to items of the account.

While appellants were not acting in bad faith in this transaction, but were doing what they believed they had every right to do, they were mistaken. The law demands they must faithfully account to appellee; but the law places no greater penalty on them than that they give appellee the value of his interest in that contract, reflected in this case by a proportion of the net profit after a deduction of all proper charges or costs.

The court below, Judge McCRACKEN presiding, Judge PARKER having been appointed to the Superior Court after all the testimony was taken, denied appellants any remuneration for their services in the completion of this contract. As we have pointed out, appellants were no longer acting as partners; they were acting, after the dissolution of the partnership, as managers of a business transaction, the net proceeds of which were to be considered as assets of a constructive trust. Appellee meanwhile was conducting, and was at liberty to conduct, his own contracts. The broad proposition that a partner is not entitled to compensation for services in performing partnership matters or in winding up its affairs does not extend beyond those duties. The principle is not applicable here. Appellants were performing acts similar to those of a liquidating partner who continues unfinished business in an effort to complete it profitably, or as a surviving partner who carries on the business after the termination of a partnership. In these two situations, special compensation for services rendered is allowed. See McElroy v. Whitney, 12 Ida. 512; Maynard v. Richards, 166 Ill. 466; Lamb v. Wilson, 3 Neb. 496; Hartman v. Woehr & Stegmuller, 18 N. J. Eq. 383; Condon v. Callahan, 115 Tenn. 285. In each case the former partner is not merely winding up the affairs of the partnership, receiving money due, paying firm debts and dividing the surplus, for the purposes of liquidation, but is expending time, skill and labor in carrying on the business that additional profits may be earned for the former partnership's benefit. In such case, this former partner

stands in the position of a stranger who has been employed to perform such services. Appellants could have employed managers and no question could be raised as to this expense. They were entitled to be paid for the services they performed, but not in the sum fixed by them. The court below must determine what is the fair value of such services by a consideration of the nature of the work, the time spent, and the skill used.

As to the question of rentals for equipment, the same principles apply. Appellants did not use partnership equipment in the performance of this contract; they used their own equipment, and would not under any view be required to furnish this equipment for appellee's use without charge. They are entitled to receive rental in an amount customarily charged for its use in such work.

Appellants were surcharged with many items for which they sought credit because they were unable to submit vouchers, bills, cancelled checks, and meet all the usual requirements of the most familiar proof. Generally speaking, where a partner fails to keep a record of partnership transactions, and is unable to account for them, every presumption will be made against him. While it is his duty to keep proper accounts, in determining whether he has met this obligation it is necessary to consider the nature of the business engaged in, the usual practices, the necessities of the time and place of carrying on the work, and, in this case, the customary practice of these partners. Road building necessarily involves the temporary employment of large numbers of persons. The personnel is likely to change repeatedly and with each job. These contracts are of but a few months duration, occurring in places widely separated. Books, time cards, batch sheets, and other original entry records must be kept in shanties alongside the road, in constantly moving offices, under the most impermanent of circumstances. This was the experience of the old partnership. To require the accuracy and permanence

of proof which one would require of a bank or of a business conducted in a well-equipped and stable office is to deny appellants a just appreciation of their situation and permits appellee to have an unfair advantage in a matter of which he had full knowledge. Contractors are not accountants, nor are they required to be. The exigencies of road construction deny the accuracy and completeness of banking practice to their records. The cancelled checks, corroborated by the testimony of the bookkeeper who received the bills and made out the checks, by that of the partner who signed the checks, payroll books, showing the amounts paid to labor employed and the trucks used, and all the other customarily retained records of such a job, are prima facie proof of the facts therein contained, and cast the burden of proving such evidence false on the person who challenges it.

Appellee, during the trial, constantly demanded that records in connection with appellants' account be disregarded as insufficient, while his testimony shows that no audit of the Connell, Laub and Bracht partnership books had ever been made, no inventory or adjustment of materials had, no accounting of individual advances, no permanent set of partnership books kept, but, rather, only a cash book system used for each job; no batch sheets, invoices, time books or other original entry data preserved. Surely to conclude that his former partners were attempting to defraud him by failing properly to keep records when they were proceeding in accord with the practice of their former partnership as well as the practice of appellee himself after the termination of the partnership, is most unfair. Such assertions have no appeal to the court.

This case involves a consideration of 2,400 pages of record, about one thousand exceptions to the order and to the account when filed, and 138 assignments of error, each dealing with specific items, and many of the assignments dealing with groups of items, all of which has required minute and careful examination. To discuss the

assignments in an opinion which should be printed in the reports, when they are of little or no interest to the general public, is unnecessary. We have, therefore, prepared and filed in connection with this opinion,—and the orders therein are to be considered as part of this opinion,—a schedule which deals with the specific assignments of error as governed by the legal principles enunciated in this opinion.

The judgment of the court below is modified in the particulars determined in the schedule, and the case is remitted for further proceedings in accord with this opinion on the question of compensation only, and for the entering of a proper decree giving effect to the allowances therein specified. Costs to be paid by appellants.