## Fishman et al. v. Saligman et al.

*G. T. Steeley* and *Carr & Krauss*, for complainants.
*D. S. Malis*, for respondents.

SMITH, P. J., July 2, 1948.—Defendant has filed preliminary objections to plaintiffs' bill of complaint wherein the latter claims from defendants the sum of $5,000 with interest.

It appears that on November 6, 1944, a seven-story building, situate on the southeast corner of Broad and Carpenter Streets, Philadelphia, known as the Kirchbaum Building, was exposed for sale by the Sheriff of Philadelphia County under a writ of fieri facias issued on a judgment of the Pennsylvania Company. Samuel Cravitz and Della, his wife, as agents for defendants, bid in this property for the sum of $250,000 and said defendants paid unto the sheriff the sum of $25,000 on

account of the sale. Under the terms of the said sale, defendants were required to make settlement within 20 days and being unable to do so, they induced plaintiffs to acquire a half interest in the property. Plaintiffs deposited $10,000 with the Pennsylvania Company and secured an extension of the time for making settlement to February 1, 1945. On January 8, 1945, plaintiffs and defendants entered into a written agreement wherein plaintiffs agreed to acquire a one-half interest in the property and to pay one half of the purchase price. The said parties also agreed to form a corporation to acquire title to the property and to subscribe to debentures and stock to be issued by the corporation. Plaintiffs as a group and defendants as a group agreed to subscribe equally to the said debentures and stock when issued. The agreement also provided that plaintiffs who were tenants in said property should continue to lease the floors which they were then occupying. Defendants conducted a business under the name of Queen Knitting Mills at another location. In paragraph 21 of the said agreement it was provided that defendants would enter into a lease for the first floor of the said building for a term of three years from February 1, 1945, for a rental of 45 cents a square foot, and that said lease would contain the usual provisions against subletting except with the approval of the board of directors of the said corporation to be formed. Paragraph 21 of said agreement also provided that if defendants trading as Queen Knitting Mills did sublet said floor and the subtenants paid to them a higher rental than 45 cents a square foot, that they shall pay such higher rental for the said floor as they shall receive. The agreement also provided that Samuel Cravitz and Della, his wife, should hold title to the said real estate for plaintiffs and defendants and the said corporation when formed, and if the corporation was not formed, they were to hold title to the real estate for and on behalf of said plain-

tiffs and defendants whose interest in the property would be the same proportion as their contributions for the settlement thereof and that Cravitz and his wife would execute and deliver to them a certificate of such trust in the usual form.

In January 1945, plaintiffs and defendants also executed articles of incorporation of the Broad and Carpenter Corporation with an authorized capital of $50,000, divided into 1,000 shares at the par value of $50 each and on January 11, 1945, a certificate of incorporation was issued to the Broad and Carpenter Corporation. On the 10th day of January 1945 (the day prior to the granting of the charter), the parties made settlement for the said real estate and a first mortgage of $150,000 was obtained. The said groups each paid the sum of $54,758, being one half of the said purchase price over and above the amount of the mortgage. Title was taken in the name of Cravitz and his wife. All leases of tenants had been terminated by the said sheriff's sale.

On February 8, 1945, before the organization meeting of the incorporators of the Broad and Carpenter Corporation, defendants sold to plaintiffs all of their right, title, and interest in and to the said property, corporation, and the agreement dated January 8, 1945, for the sum of $56,758 (or about $2,000 more than defendants had contributed to the purchase price of the building). Thereafter Samuel Cravitz and Della, his wife, executed a deed conveying said property to the Broad and Carpenter Corporation. After defendants had sold, transferred, and assigned all of their right, title, and interest in and to the real estate, the corporation, and the agreement of January 8, 1945, to plaintiffs, at a meeting of the board of directors of the said corporation, the corporation leased the first floor of the said premises to Jacob Reed's Sons for a term of five years from February 1, 1945, at an annual

rental of $15,570. While plaintiffs and defendants were equitable owners of the property, defendants on February 2, 1945, without the knowledge or consent of plaintiffs, demanded and received from Jacob Reed's Sons a certified check in the sum of $5,000 in consideration for the waiving of their rights in paragraph 21 of the agreement of January 8, 1945. Plaintiffs did not have any knowledge of this payment to defendants until several months after plaintiffs had purchased the interest of the said defendants.

The preliminary objections filed by defendants are as follows:

"Complaint does not set forth any cause of action in that it sets forth no facts which would impose upon the defendants the duty to account to the plaintiffs for the monies received from Jacob Reed's Sons; the defendants did not assign their rights to the lease, as set forth under paragraph 21 of the bill of complaint; the transaction with Jacob Reed's Sons, wherein defendants obtained $5,000 did not amount to a partnership transaction, and therefore, do not have to account to the plaintiffs herein as a secret profit."

The said agreement of January 5, 1945, shows that plaintiffs and defendants had such a community of interest in the purchase of this building and the leasing by each of them of the several respective floors as to amount to a copartnership. The right to lease the first floor under the said agreement, paragraph 21, was given to defendant who operated under the trade name of the Queen Knitting Mills. This right was to some degree constricted. It provided for a term of three years from February 1, 1945, at a fixed rental and the right contained a provision that it could not be sublet to a third party without the consent of the board of directors of a corporation that plaintiffs and defendants were in the process of forming. The said paragraph 21 also clearly indicated that if defendants sublet, they would not be entitled to any increase in the rental received. The whole arrangement from the

start shows that a community of interest existed between plaintiffs and defendants. It is apparent that if defendant had sublet to Jacob Reed's Sons, who at the time of the sheriff's sale were in possession of the said first floor, for a sum in excess of that provided for in the agreement of January 8, 1945, defendants would have had to pay the increased rental. This shows definitely that it was agreed defendants were not to benefit by any increased rental they might receive from any subletting. While this community of interest existed and the day after their own lease commenced, on February 2, 1945, they received from Jacob Reed's Sons the sum of $5,000 and waived their right to a lease under said paragraph 21 of the agreement of January 5, 1945. Defendant contends that this had nothing to do with the partnership business in the building and that they transferred their rights under said paragraph 21 to Jacob Reed's Sons in consideration of the proceeds of the $5,000 check. It must be manifest that if defendants were prohibited from subletting without the consent of the directors of the corporation in the process of forming, that by inference they were not free to transfer their rights under the terms of the agreement without the same consent. The intent of the parties then having a community of interest is the thing that is controlling. It was not intended that defendants having a right to lease, could barter it for their own financial advantage. The fact that they circumvented the restrictions in paragraph 21 by an attempted transfer of their right under said paragraph 21 does not relieve them of the restrictions contained in the same paragraph. Not only did defendants retain the $5,000 received from Jacob Reed's Sons, but they did it without the knowledge or consent of plaintiffs. Then on February 8, 1945, by an agreement in writing, defendants sold all their right, title, and interest in the said building and the corporation to plaintiffs as well "to release or discharge Progressive

and Fishman, their heirs, executors and administrators from any and all liability, claim and demand we have or may afterward have against Progressive and Fishman under said agreement dated January 8, 1945 and/or in connection with the purchase of the said property and the formation of the Broad and Carpenter Corp." While defendants sold all their right, title, and interest to plaintiffs in everything that they possessed in community of interest with plaintiffs from the time a partnership relation existed between them up to February 8, 1945, they had made a secret profit of $5,000. The relationship of defendant with Jacob Reed's Sons is not difficult to comprehend. The latter was in possession of the first floor and most likely desired to remain there. It is easy to understand how defendants prevailed upon the occupant to pay them the sum of $5,000 to keep from being evicted. The important dates at the end of the relationship between plaintiffs and defendants must be scrutinized. It seems apparent that while defendants were considering selling out their right, title, and interest to plaintiffs, they saw an opportunity to secure from the first floor tenant the sum of $5,000 by giving up their right to lease said floor. At this time it is convincing that they most likely had no intention of exercising that right. The Jacob Reed's Sons makes no complaint. There may be an inference that it is satisfied with the transaction. It remained in the building under a new lease from Broad and Carpenter Corporation, which took place subsequent to the sale to plaintiffs by defendants. Yet while the community of interest existed between plaintiffs and defendants, and the said real estate was owned as beneficial owners by plaintiffs and defendants under the relationship of partners, the sum of $5,000 came to defendants as one of the partners by reason of an interest had by them in the realty under the said agreement of January 8, 1945.

There does not seem to be any case in point, but the principle of law is that one partner may not benefit to the exclusion of a copartner in a partnership transaction where he possesses knowledge about a matter which he knows is not within the knowledge of his copartner. In the case of Susan E. DuPlaine, Dec'd., 185 Pa. 332, 334, it was stated:

"It has been settled that where there is a community of interest there is a community of duty, each of those interested must be faithful to himself and equally as well to all the others interested. He can secure no advantage over the others, because he has found out something they do not know, or because perhaps he is in a better position to protect himself than are they."

In Bracht v. Connell, 313 Pa. 397, 402, it was stated:

"Partners stand in a fiduciary relationship to copartners; each is under a duty to act for the benefit of all and not to gain individual advantage at the expense or to the detriment of other partners: Partnership Act of March 26, 1915, P. L. 18, par. 4, section 21. When a partnership has terminated, for whatever reason or by whatever means, the assets of the partnership must be handled in accordance with this fiduciary principle."

There are numerous cases which hold that partners must account for secret profits.

It seems to us that when Jacob Reed's Sons paid the sum of $5,000 to defendants just before the latter sold all of its right, title, and interest to plaintiffs, that this payment by inference may be construed as a bonus paid by Jacob Reed's Sons to hold possession and secure a lease from the corporation then being formed. If it is a bonus, it then may be included as a payment of rent in addition to that sum agreed to be paid to the corporation in the said lease.

332

*Order*

And now, to wit, July 2, 1948, for the reasons above set forth, the preliminary objections filed by defendants are dismissed and defendant is given 20 days to file an answer on the merits.