## Clement, Appellant, v. Clement.

Argued March 20, 1969. Before Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

reargument refused January 29, 1970.

*Charles D. Coll,* for appellant.

*Marvin J. Apple,* for appellees.

*Harold A. Gold,* with him *Baskin, Boreman, Sachs, Gondelman & Craig,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 9, 1970:

Charles and L. W. Clement are brothers whose forty year partnership has ended in acrimonious litigation. The essence of the conflict lies in Charles' contention that L.W. has over the years wrongfully taken for himself more than his share of the partnership's profits. Charles discovered these misdeeds during negotiations with L.W. over the sale of Charles' interest in the partnership in 1964. He then filed an action in equity, asking for dissolution of the partnership, appointment of a receiver, and an accounting. Dissolution was ordered and a receiver appointed. After lengthy hearings on the issue of the accounting the chancellor decided that L.W., who was the brighter of the two and who kept the partnership books, had diverted partnership funds. The chancellor awarded Charles a one-half interest in several pieces of property owned by L.W. and in several insurance policies on L.W.'s life on the

ground that these had been purchased with partnership assets.

The court en banc then heard the case and reversed the chancellor's decree in several material respects. The reversal was grounded on two propositions: that Charles' recovery could only be premised on a showing of fraud and that this burden was not met, and that the doctrine of laches foreclosed Charles' right to complain about the bulk of the alleged misdeeds.

We disagree with the court en banc's statement of the applicable law and therefore reverse. Our theory is simple. There is a fiduciary relationship between partners. Where such a relationship exists actual fraud need not be shown. There was ample evidence of self-dealing and diversion of partnership assets on the part of L.W.—more than enough to sustain the chancellor's conclusion that several substantial investments made by L.W. over the years were bankrolled with funds improperly withdrawn from the partnership. Further, we are of the opinion that the doctrine of laches is inapplicable because Charles' delay in asserting his rights was as much a product of L.W.'s concealment and misbehavior as of any negligence on his part. In all this we are strongly motivated by the fact that the chancellor saw and heard the various witnesses for exhausting periods of time and was in a much better position than we could ever hope to be to taste the flavor of the testimony.

The Act of 1915, March 26, P. L. 18, part IV, §21, 59 P.S. §54, very simply and unambiguously provides that partners owe a fiduciary duty one to another. See also P.L.E. Partnerships, §§71, 91, 93. One should not have to deal with his partner as though he were the opposite party in an arms-length transaction. One should be allowed to trust his partner, to expect that he is pursuing a common goal and not working at cross-purposes. This concept of the partnership entity was

expressed most ably by Mr. Justice, then Judge, CAR-DOZO in *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545 (1928):

"Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'distintegrating erosion' of particular exceptions. . . . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court." 249 N.Y. at 463-64, 164 N.E. at 546.

It would be unduly harsh to require that one must prove actual fraud before he can recover for a partner's derelictions. Where one partner has so dealt with the partnership as to raise the probability of wrongdoing it ought to be his responsibility to negate that inference. It has been held that "where a partner fails to keep a record of partnership transactions, and is unable to account for them, every presumption will be made against him." *Bracht v. Connell*, 313 Pa. 397, 405, 170 Atl. 297, 301 (1933). Likewise, where a partner commingles partnership funds with his own and generally deals loosely with partnership assets he ought to have to shoulder the task of demonstrating the probity of his conduct.

In the instant case L.W. dealt loosely with partnership funds. At various times he made substantial in-

vestments in his own name. He was totally unable to explain where he got the funds to make these invest-ments. The court en banc held that Charles had no claim on the fruits of these investments because he could not trace the money that was invested therein dollar for dollar from the partnership. Charles should not have had this burden. He did show that his brother diverted substantial sums from the partnership funds under his control. The inference that these funds provided L.W. with the wherewithal to make his investments was a perfectly reasonable one for the chancellor to make and his decision should have been allowed to stand.

The doctrine of laches has no role to play in the decision of this case. It is true that the transactions complained of cover a period of many years. However, we do not think that it can be said that Charles negligently slept on his rights to the detriment of his brother. L.W. actively concealed much of his wrongdoing. He cannot now rely upon the doctrine of laches—that defense was not intended to reward the successful wrongdoer.

The decree is vacated and the case remanded for further proceedings consistent with this opinion.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

DISSENTING OPINION BY MR. JUSTICE EAGEN:

In 1923, L. W. Clement and his younger brother, Charles, formed a partnership for the purpose of engaging in the plumbing business under the name of Clement Brothers. They agreed to share the profits of the business equally after payment of the debts. L.W. was the more alert and aggressive of the two. He attended special training schools to upgrade his plumbing skills, and became a master plumber. He alone conducted the business here involved, and had complete

control of its finances. He frequently worked nights, Sundays and holidays. Charles, on the other hand, refused to be "bothered" with the administration of the business or its finances. He insisted also on limiting his work to a regular eight-hour shift and confining his contribution to the business to the performance of various plumbing jobs assigned to him.

Over the years, L.W. accumulated assets which eventually became quite valuable. For instance, in 1945 he purchased two lots of land for $5500, and subsequently constructed a commercial building thereon. This construction was financed in most part by money secured through placing a mortgage on the property. In 1951 he purchased another piece of real estate for $3500, and in 1927, 1936, 1938, 1945, 1947, 1955 and 1965 purchased policies of life insurance on his own life. There are presently existing substantial loans against some of these policies.

In 1964, Charles for the first time accused his brother, L.W., of misusing partnership funds to gain the assets he had accumulated. Charles did not have any evidence to substantiate the accusation, but surmised something must be wrong since L.W. had so much while he had so little.

At trial, not a scintilla of evidence was introduced to establish that L.W. diverted any partnership funds to purchase any of his personal assets. In view of this, a majority of the court en banc below ruled that Charles failed to establish that he had any interest or property rights therein. With this I agree. The majority of this Court now rule, in effect, that, because of the fiduciary relationship existing, it is L.W.'s burden to prove that he did not misuse partnership funds. This I cannot accept on the existing record.

Finally, it is clear from the record that as to the real estate involved, Charles had full knowledge for many years of its acquisition by L.W. before making

any complaint. While it is true that the mere passage of time is insufficient to warrant the enforcement of the doctrine of laches, there is more in this case than the mere passage of time.

I dissent and would affirm the decree of the court below.