## Hessan v. Gross

*Jay D. Barsky,* for plaintiff.
*Nathan L. Posner,* for defendant.

SAYLOR, J., February 24, 1971.—In this equity action plaintiff asked the court to issue an order, preliminarily until hearing and perpetually thereafter, restraining defendants, his former partners in two building construction projects, from disposing of the proceeds of the sale of a project at Wyomissing, Pa., and a project at Hatfield, Pa., to deposit such proceeds

at interest; declaring releases executed by plaintiff to be null and void; and restoring plaintiff to his status as a partner in both projects as their interests were originally designated.

Hearings on the application for a preliminary injunction based on the bill of complaint, answer, new matter and reply to new matter were held before Judge Greenberg on November 7 and 10, 1969, following which the hearing judge denied prayer of the petition.

On January 22, 25 and 26, 1971, at the trial of the action testimony of plaintiff and of defendants, the latter as in cross-examination, was taken and various exhibits were admitted into evidence. Defendants moved for a nonsuit.

Plaintiff is a real estate developer and broker. Defendants are engaged in various phases of the building and construction business.

In 1965 or 1966, plaintiff introduced defendant Gross to land at Wyomissing on which they planned the erection of apartments. Early in 1966 or 1967, Segal representing himself as a builder, agreed to make a cash capital contribution to the project.

The three parties executed a written agreement of partnership for the development of the Wyomissing land. Paragraph 5 of the agreement required Segal to take charge of all construction, Gross to take charge of all financing and marketing and Hessan to take charge of zoning changes, real estate sales and local municipal personnel management. Likewise, Hessan was to assist his two partners. Plaintiff procured the zoning change which permitted the erection of apartments in such fashion as to increase materially the value of the tract of land.

Later the three partners and a Mr. Dintenfass repeated substantially the process at Hatfield and entered into a written partnership agreement for the

development of garden-type apartments on the land there situated. Dintenfass later withdrew as a partner.

At Wyomissing financial difficulties arose as there was the likelihood that subcontractors would threaten suit and the construction lender would withhold advances. Whether or not representations of various kinds were made to plaintiff regarding the financial situation, plaintiff as a partner was in the position that his personal estate would be liable for any existing deficiencies. In any event, plaintiff agreed in writing to sell his interest in the Wyomissing project for $40,000. He executed a written agreement whereunder he withdrew as a partner.

In the case of the Hatfield project in order to supplement the financing there a New York firm acquired 50 percent of the project leaving each of the original three partners a 16⅓ percent interest. Here too, financial difficulties arose and the partners were faced with the possibility that the New York firm would take over the entire project and hold them personally liable for their proportionate share of the partnership indebtedness to that firm.

Plaintiff agreed in writing to release his interest in the partnership with defendants, and, in the $15,000 balance remaining unpaid on the partners' agreement made at the time, plaintiff withdrew from the Wyomissing project. By the agreement concerning the Hatfield project plaintiff was released from liability for obligations of the former partnership.

It is clear from the background of plaintiff that his primary responsibility to the partnership was to assist in the acquisition of land, the obtaining of such zoning as was necessary to develop it profitably as sites for apartments thereon to be erected, and to attend to the marketing of the units in the apartments when completed. Defendants' responsibility was to arrange the

financing of the projects and to erect the apartments. However, all three partners were jointly responsible for the conduct of the partnership and the execution of the projects for which the partnerships were created.

Plaintiff complains that information in the possession of defendant partners during the construction of the building projects was improperly withheld from him with the result that he withdrew from the two partnerships without full knowledge of the facts, to which, as a partner, he was entitled; and that he has suffered serious financial loss because after his withdrawal in both instances the financial picture changed and, being no longer a partner, he was and is being deprived of the profits enjoyed by defendants by reason of their sale of the apartments at considerable advantage to them.

The testimony shows that in the progress of both building operations conducted by the partnerships difficulties arose. Failure of contractors to perform their obligations properly, the shortage of funds needed for the projects due to inadequate original financing, rising costs, hesitation of the construction lender to advance funds until units were under contract to tenants and failure to obtain adequate loans from the partners and other individuals. It is apparent from the record that the plaintiff who enjoyed a financial standing superior to that of defendants came to the conclusion that he should withdraw from the partnerships in order to escape his commitment to the financial success of the building ventures. After consulting with his attorney, in at least one of the instances of withdrawal, he voluntarily did so. In the first instance, that of the Wyomissing project, he was to be paid $40,000 of which sum in two payments he received $25,000. In the second instance, that at Hatfield, he was relieved of all financial liability

upon surrendering his right to receive the remaining $15,000 due under the prior release arrangement.

He has now come into court to contend that his former partners should restore him to the position he held prior to the withdrawals so that he can enjoy his share of the profit the partnership ultimately realized.

Plaintiff has contended that he was deceived. However, in his testimony he admits knowledge of the difficulties being experienced by the two partnerships prior to his withdrawal. He was aware that the construction lender was not going to advance more money unless other funds were found for the Wyomissing project. That was the time he agreed to sell his share in that project. He knew that there was a deficiency amounting to $280,000 in funds necessary to proceed with the Hatfield project and that such deficiency had to be supplied through the New York people who purchased a 50 percent interest in the partnership. He was aware of the unpaid claims of contractors that embarrassed the partnership. Bricklayers and plumbers were threatening suit. Loans had to be made from time to time from individuals outside the partnership to keep the project moving. He visited the scene of the operation from time to time. He attended meetings of the partners. He was advised of problems as they arose. He knew that it had become apparent that additional money was needed based upon what his partners and the contractors said. He knew that the Wyomissing project was behind schedule and that the construction lender would not advance more funds.

On the stand plaintiff frequently stated that he did not remember if he signed notes, that he did not remember what loans were being made to the partnership by others than the construction lender, that he did not remember reading agreements before he signed

them and that he did not remember if he knew about the trouble at the Hatfield site although he said that he visited it every couple of weeks.

He did know, he said, that he might be liable up to over a million dollars if things went wrong at a project. He did know that he had the same obligations to the New York people that he had to his partners, the defendants. And he did not make a final decision to get out of the partnership for the Hatfield project until he had discussed it with his attorney to whom he gave the release document. Plaintiff stated that it took some time for him to get out of the Hatfield project and that it was not a sudden decision.

Plaintiff did not present any evidence of improper conduct by a defendant partner nor did he cite any instance of a partner withholding from him any information concerning the partnership, the claims of contractors, the shortage of construction funds, or the financial condition of the partnership.

This is not a case of an uninformed and unsuspecting individual engaged in business undertakings with partners far more experienced than he in the affairs of the business world. Plaintiff is no novice in the realm of land development and building construction.

By his own testimony it is established and it is found as a fact that plaintiff is a licensed real estate broker and developer, an expert in real estate development, and an operator and developer over the past two decades. He has managed apartments, acted as consultant in marketing, advised as to what apartment projects would produce and as to building costs. He has developed many service stations for oil companies, has handled leases, has knowledge concerning the rentability of apartments in various areas, has served as an expert in the appraisement of apartment buildings and has been active as an owner of, or consultant,

in the operation of apartment buildings in half a dozen communities in Pennsylvania.

Plaintiff stated that he has been aware that in building projects usually extras arise which cost money, that labor costs increase as properties are developed, that problems arose in the Wyomissing and Hatfield projects involving bricklaying and plumbing, that he knew money was needed to satisfy claims and carry on the work, that the project at Hatfield was behind schedule, that he did not help his partners raise extra funds, that he may not have looked at the construction breakdown, that he did not want to put up his share of the $280,000 needed to proceed with the Hatfield project, that money in addition to that sum was needed to carry on and that he had no obligation to put up such money.

Defendants, as witnesses called for cross-examination, testified that all three partners had worked together, that they had had many meetings at the partnership office, that there was a constant need of money to proceed with the projects and various sources of money were looked to, and when plaintiff was asked for an advancement of funds he refused to give any, that the situation at both Wyomissing and Hatfield had been "bleak" for some time, that at Hatfield it was "nip and tuck" and that plaintiff wanted to get out of that project on any terms as he did not want to get any deeper into debt there.

From the record it is difficult to see in what instances or in what way defendants so conducted themselves as partners as to have incurred any liability to plaintiff to account to him or to restore to him the two partnership interests he once possessed.

As partners the three parties owed the highest duty to deal with each other in the utmost good faith. Each

had the duty to keep his partners well informed on partnership matters. Each had an obligation to divulge to his partners information necessarily to be possessed by any partner desiring to withdraw from the partnership.

In 120 A.L.R. 724, 725 (1939), it is said that "The general rule that the utmost good faith is required of partners in their relationship with each other, and that, since each is the confidential agent of the other, each has a right to know all that the others know and each is required to make full disclosure of all material facts within his knowledge in any way relating to partnership affairs, is held almost universally to apply in the case of a sale by one partner to another of his interest in the partnership."

All that does not mean, however, that, where a partner sells out to his partners his interest in a partnership for a figure or upon terms that he later finds unacceptable, he thereby automatically has a cause of action that entitles him to rescind his withdrawal and obtain full restoration to the partnership and the full enjoyment of its assets and expectations.

The burden of proving that his partners withheld from him at the time he left the partnership information vital to a proper understanding of the situation in which the partnership found itself was upon plaintiff. The assertion that something was withheld and that representations were made by his partners is not actual proof thereof. Acts of commission or omission must be proven before the burden of proving their transactions with plaintiff were fair passes to the partners. Until such point is reached there is no obligation of defendant partners to establish in court every detail of their business relations with plaintiff at the time of the so-called buy-out. Absent evidence

of improper conduct by defendants, no explanation is necessary by them to establish the fairness and propriety of what they have done.

Plaintiff's counsel cites the case of Clement v. Clement, 436 Pa. 466 (1970). There, plaintiff, by proving that his partner failed to keep records of partnership transactions, could not account thereon and commingled partnership funds with his own, placed defendant in a situation where very naturally he had to give an explanation. Plaintiff having produced ample evidence of self-dealing and diversion of partnership assets it was not necessary for him to show actual fraud. It was necessary for defendant to give a full accounting or explanation.

The circumstances in Clement v. Clement, supra, are not present here. There is no evidence of improper conduct on the part of defendants. While plaintiff complains that after his withdrawal from the two partnerships there was a successful completion of the two building projects resulting in an appreciable increase in their value, he does not show any misrepresentations of facts existing at the time he voluntarily withdrew from the partnerships. There is evidence to show that such withdrawal was prompted by plaintiff's disinclination and refusal to become more deeply involved financially in the partnership projects that, at the time of withdrawal, required additional financial aid of the partners.

In Konsuvo v. Netzke, 91 N.J. Super. Ct. 353 (1966), there was a buy-out but there the purchaser was in effect the manager of the partnership business and he alone of the partners possessed full knowledge of its financial circumstances. That partner's description of the financial position was unfavorable whereas the fact was that a true account of the position would show that it was favorable. Hence the buy-out was set

aside. Also in Inman v. Parr, 311 S.W. 2nd 658 (Tex. App. 1958), where the buying partner had exclusive control of the business and misrepresented its worth the buy-out was set aside there also.

In Goldstein Co. v. Greenberg, Inc. 352 Pa. 259 (1945), there was involved only an isolated joint venture between two real estate people one of whom made false statements to the others.

In the instant case there is no evidence that access to the partnership books was denied to plaintiff. While they may have proved troublesome to reach as they were kept at the partnership office, that office and those books were the office and books of not only defendant partners but of plaintiff likewise. There is no testimony in the record showing that plaintiff was denied access to them or that there were false entries in the books causing plaintiff to have been misled when he agreed to defendants' buy-out of his interest in both partnerships.

Actually, plaintiff was no novice to the construction business of the character the two partnerships engaged in. By his own testimony he had had over a long period of years valuable experience in the acquisition of land, the construction of apartments thereon, the matter of negotiating loans of funds necessary to the projects and the marketing of the finished apartment units. From this experience and with his knowledge of the value of the lands before and after the zoning changes, which he was able to procure, he had the same knowledge of the real estate owned by the partnership and of its worth, as did his partners, and he knew as well as they did of the financial difficulties that faced them. Plaintiff has not borne the burden of proving that defendants' knowledge of the partnership affairs was superior to his and that such knowledge was concealed or withheld. Where a part-

ner has access to partnership books and records and where an alleged right of the partnership to recover a sum of money was not revealed to the selling partners by the purchasing partner and the possibility of such claim was discussed by the partners and the selling partners had access to the books and records, the Supreme Court held that the selling partners had no cause of action: Wiley v. Brundred, 158 Pa. 579 (1893).

In Geddes Appeal, 80 Pa. 442 (1876), relief was denied plaintiff, whose partnership interest was purchased by defendants, because he failed to prove any false entries in the books access to which was not denied him. Also, in Guenther v. Kutz, 270 Pa. 144 (1921), the court found that plaintiff was familiar with the facts and was under no improper influence. Hence the burden of proving the invalidity of the contract rested upon him. Succinctly, the court said, page 145, "Where parties stand upon equal terms, the law will not convict one of fraud merely because he made a good bargain."

In summary the burden was on plaintiff to prove that (a) defendants' representations were false; (b) he relied on them; (c) upon a proper investigation made by him he could not have learned that they were false. Plaintiff has not borne that burden. He has done no more than show that when he sold out to defendants he did so without depending on any representations of defendants which were false and which could be found to be false had he not accepted as true what he had been told and of what, as an experienced active member of the partnership, he was well aware.

That the two ventures eventually prospered following refinancing that occurred many months after plaintiff's withdrawal is not the basis of a right on the part of plaintiff to be restored to the partnership.

On the subject of restoration by plaintiff of the status

quo, it is a fact that plaintiff made no effort to place the parties in the position they occupied prior to each of the two buy-outs. Plaintiff received in cash $25,000 of the $40,000 for which he sold his interest in Wyomissing. In the Hatfield matter he released his partners of their obligation to pay him the remaining $15,000 and was in turn released by them from his obligation to provide funds to assist them in the furthering of that project.

In Lyle v. Shay, 165 Pa. 637 (1895), where a former partner sought cancellation of his sale of his partnership interest to defendant, the court, after holding there was no proof of fraud or concealment, said that had there been any such proof of concealment and fraud in effecting the sale as would have justified him in rescinding, he should have prepared the way for so doing by at least offering to put his vendee in status quo by refunding the consideration money.

In Stimson v. Stimson, 346 Pa. 68 (1943), a wife's effort against her husband to rescind a conveyance of real estate failed to succeed for the reason among others that she did not offer to return the consideration she had received. Also in Nulton's Appeal, 103 Pa. 286 (1883), the court held that a prerequisite to the right of a complainant to recover for want of consideration, mistake and ignorance of legal right was that he must reconvey to defendant her dower interest in that part of the tract of land she had conveyed.

We are concerned here with what the facts and circumstances were when plaintiff withdrew from the partnerships. That the surviving partners were at a later date able to secure new financing which enabled them to proceed with the completion of the two projects is not cause for any conclusion that there was any misrepresentation of the facts and circumstances existing at the time plaintiff withdrew many months previous.

The Wyomissing project was refinanced eleven months after plaintiff was bought out for an additional $500,000 and was sold approximately two years later for $350,000 or more above the mortgage.

The Hatfield project was sold approximately two years after plaintiff's withdrawal for a million dollars above the mortgage.

Much could have happened during those two periods of time. Much could have been and apparently was accomplished by the surviving partners in refinancing the two projects. Much of the considerable increase in their value could be attributed to market conditions.

There is no evidence here that the financial picture of the two projects at the time plaintiff withdrew was incorrectly stated by defendants nor that the facts and circumstances existing at such time were misrepresented or were in any way different from what plaintiff himself knew them to be when he elected to withdraw and to be relieved thereafter of any and all financial obligations borne by him as a partner.

This is not the case of only defendants having full knowledge of the partnerships' financial circumstances. There is here no partner on whom the others relied because of such knowledge. If defendants in February 1967 and in December 1967, when plaintiff withdrew as a partner in the respective projects, painted a dark picture of their financial and construction condition they did no more than state the conditions that then existed and that plaintiff himself knew existed. The picture did not change overnight or within weeks or a few months. It was nearly a year before refinancing was brought about and that without the aid of plaintiff.

Plaintiff contends that he received inadequate consideration. There is nothing in the record to show that the consideration he received, cash in one instance

and relief from financial obligations in the other, was in any way inadequate when received.

This is not a case where two partners were in active control of the business. All three partners were in control. While one defendant was the financial man and the other the construction man, plaintiff was the expert on land values, construction costs and apartment unit marketing. To be sure plaintiff reposed great confidence in his copartners. But he was well aware of what was going on and he did not by any means rely solely on their representations when he decided to withdraw from partnership with them.

Plaintiff correctly contends that defendants as partners holding a fiduciary relationship to him must bear the burden as buyers of proving by factual evidence that they have lived up to their fiduciary relationship. However, that does not entitle him to make them establish in court each and every fact of a financial or other nature when charged by plaintiff with unfair treatment. All of the material facts relating to the situation that existed in the two projects at the time of plaintiff's withdrawal were, as the record shows, related to plaintiff by defendants or ascertained by him as an active partner in constant touch with the situation at each project.

The conclusions reached by the trial judge are not in any way based upon answers by the respective defendants to questions directed by him toward the end of the trial. They are based exclusively on plaintiff's own testimony and the testimony of defendants given in cross-examination.

With the record what it was at the close of plaintiff's case there was no necessity on the part of defendants to go forward with evidence as there was no burden then resting upon them to justify their conduct at the time of plaintiff's withdrawal whether that conduct involved acts of commission or acts of omission. Plain-

tiff had failed to establish conduct by defendants that was unfair, lacking in full disclosure, untrue, or in any way calculated to deceive plaintiff. That defendants should be called upon to establish for the record facts concerning their refinancing of the projects and the sale thereof after the passage of from 11 months to 2 years is not only unnecessary but not germane to the determination of the issue. What we are concerned with here is the set of facts and circumstances surrounding the events of February and December 1967 when plaintiff chose to withdraw from the partnerships.

That in the course of time it developed that the projects initiated by plaintiff and his copartners were finished and proved to be very profitable investments there is no doubt. Plaintiff now concludes that he made an unwise move when he got out. It may have been proved to be a bad bargain, but plaintiff made it with his eyes open. When he made it the existing facts and circumstances indicate that it was a good one. Plaintiff has not proven that he is entitled to relief.

Under Pennsylvania Rule of Civil Procedure 1512 a compulsory nonsuit is entered.