**Smith v. Acorn Management Co.**

*William Kurt Malkames,* for plaintiff.
*David A. Eisenberg,* for defendants.

McGINLEY, *J.,* January 2, 2007—In 1984, John Clayton Smith, the plaintiff, entered into a general partnership known as Acorn Management Company. There were five partners: Charles Smith, the plaintiff herein, John McDevitt, a defendant herein, Joseph Kibartas, Charles Muldoon, and Joseph Arnoldy. The written partnership agreement contained provisions for a managing partner and for the dissolution of the partnership upon the withdrawal or death of any partner.

The partnership agreement (and addendum executed in 1984) controlled the affairs of the partnership until the 1986 death of Joseph Kibartis gave rise to a new partnership agreement on November 2, 1987. This is the last written partnership agreement.

From the inception of the partnership, Mr. Smith acted as the managing partner. The 1987 agreement provided that no single person would act as a managing partner.

In 1991, Mr. Smith filed for bankruptcy. It appears that McDevitt took over the day-to-day responsibilities for the affairs of the partnership.

McDevitt completed IRS schedule K-1 (Form 1065), Partner's Share of Income, Credits, Deductions, etc. for the years 1992 to 2001. All reported Smith to be a partner. McDevitt claims he sent copies of those forms to Smith, and Smith claims he never received them. McDevitt concedes that he did not send the forms by registered mail, return receipt requested. In making a determination of credibility, we conclude that McDevitt did not send copies of those tax forms to Smith.

McDevitt also conceded that he had had no other communication with Smith about the affairs of the partnership, and did not send him annual reports or any other communication concerning the affairs of the partnership.

As part of the bankruptcy proceedings filed by Smith in 1991, Smith entered into a stipulation in 1992 that provided:

"Smith agrees to assign to VanHorn, Rose and Rose P.C. all of his right, title and interest (but not his or their liabilities) in and to his partnership interest in Acorn Management Company Partnership to the extent of the partnership's interest in Polaris Aircraft (a limited partnership). VanHorn, Rose and Rose P.C. shall not assume any obligation relative thereto and the assignment shall, at the election of VanHorn, Rose and Rose P.C. be made the subject of a charging order against Smiths' interest therein. Smith agrees and does hereby reaffirm his debt to VanHorn and Rose to the extent of the foregoing interest in Polaris. It is debtor's intent to create a limited

security interest in an exempt asset, the partnership interest, which debtor believes has little, if any valve [sic]."

The Polaris partnership, in which Acorn held a small interest, apparently did have value that became apparent when, in 2001, the asset of the Polaris partnership was sold for a substantial cash sum. Defendant McDevitt knew of the sale, but made no effort to advise Smith about the sale. John McDevitt, without any notice to Smith, distributed Smith's share of the proceeds to a third party pursuant to the stipulation and assignment that Smith had signed in 1992. McDevitt did not retain any portion of the proceeds to cover Smith's substantial tax liabilities occurring as a result of the sale, nor did he give Smith an opportunity to attempt to do so.

Smith, not being provided annual accountings from the partnership, nor copies of federal tax filings, was not aware of the sale of the Polaris asset until 2003, when he received a deficiency notice from the IRS for taxes and penalties on his share of the proceeds from the sale of the assets in the Polaris Aircraft Ltd. partnership.

Mr. Smith contends that by virtue of the 1992 stipulation, he had conveyed his partnership interest in toto to VanHorn, Rose and Rose P.C. and seeks a determination of the court that he was not a partner in Acorn when the Polaris interest was sold. The defendants contend that Smith conveyed merely a "security interest" in an asset of the Acorn partnership, the Polaris Aircraft Limited partnership, and that he still continued to be a partner in Acorn.

We do not agree with the plaintiff that the stipulation conveyed his partnership interest, or that the stipulation removed him as a partner in Acorn. The literal language

of the stipulation merely conveys his interest in assets (but not liabilities) of the Acorn partnership. Furthermore, the addendum executed in 1987 provided a specific procedure for withdrawal from the partnership, including 30 days prior written notice of intent. These steps were not taken by Mr. Smith. Because Smith failed to effectively end his partnership relationship, he remained a partner, and we deny his request for a declaration to the contrary.

The remaining question is whether the partnership and defendant McDevitt met their fiduciary obligations to partner Smith. What were the fiduciary obligations?

Both plaintiff and defendant ceded the managing responsibilities of the partnership to McDevitt. However, the 1987 agreement provided that there was no managing partner. Because there was no evidence of specific modification of that provision, we do not apply the law as to the duties of a managing partner. Instead, we refer to the duties of a general partner.

The duties are set forth in the agreements, and also in the Pennsylvania statute.

"*15 Pa.C.S. §8331—Rules determining rights and duties of partners.*

"(1) Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property, and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership, according to his share in the profits.

"(2) The partnership must indemnify every partner in respect of payments made and personal liabilities reason-

ably incurred by him in the ordinary and proper conduct of its business or for the preservation of its business or property.

"(3) A partner who, in aid of the partnership, makes any payment or advance beyond the amount of capital which he agreed to contribute, shall be paid interest from the date of the payment or advance.

"(4) A partner shall receive interest on the capital contributed by him only from the date when repayment should be made.

"(5) *All partners have equal rights in the management and conduct of the partnership business.* (emphasis supplied)

"(6) No partner is entitled to remuneration for acting in the partnership business in winding up the partnership affairs.

"(7) No person can become a member of a partnership without the consent of all the partners.

"(8) Any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners but no act in contravention of any agreement between the partners may be done rightfully without the consent of all the partners."

We have italicized section 5, which provides that all partners have equal rights in the partnership management.

Although Smith had transferred his interest in assets in the Polaris partnership, he had not transferred or surrendered his rights to participate in the Acorn partnership.

The right to participate in management is also provided for as follows:

"*15 Pa.C.S. §8341—The property rights of a partner are:*

"(1) His rights in specific partnership property.

"(2) His interest in the partnership.

"(3) His right to participate in the management."

McDevitt concedes he did not send Smith annual reports, and we find that he did not send him copies of the annual tax returns, which communications are mandated by the nature of the partnership relationship. He did not consult or advise that the asset of the Polaris partnership was sold. He disbursed Smith's funds to a third party without notice to Smith. He made no effort to protect Smith from, or warn Smith about, unanticipated tax liability arising from the affairs of the partnership. We therefore conclude that McDevitt violated Smith's partnership property rights.

Having so concluded, we then proceed to fashion a remedy.

"*15 Pa.C.S. §8334(a)—General rule.*

"Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.

"*15 Pa.C.S. §8335—Right of partner to an account.*

"Any partner shall have the right to a formal account as to the partnership affairs:

"(1) If he is wrongfully excluded from the partnership business or possession of its property by his co-partners.

"(2) If the right exists under the terms of any agreement.

"(3) As provided by section 8334 (relating to partner accountable as fiduciary).

"(4) Whenever other circumstances render it just and reasonable."

The difficulty presented is that McDevitt, while violating Smith's right to participate and remain informed of the affairs of the partnership, did not personally gain any financial benefit from his careless or malicious indifference to Smith's rights. We are unable to say that McDevitt himself improved his own financial situation by the mistreatment of Smith's.

Nonetheless, Smith's injured rights as a partner need redress, inasmuch as the injury was caused by McDevitt's complete disregard. Greed is not the only motive for injury to a partner, and money not the only gain.

In *Clement v. Clement,* 436 Pa. 466, 469, 260 A.2d 728, 729 (1970), the Supreme Court examined the nature of the responsibilities of a partner.

"This concept of the partnership entity was expressed most ably by Mr. Justice, then Judge, Cardozo in *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1 (1928):

" 'Joint adventurers, like co-partners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As

to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions . . . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court.' 249 N.Y. at 463-64, 164 N.E. at 546."

Therefore, the equitable remedy appropriate to this case is that McDevitt should be responsible for the indebtedness Smith now suffers, since McDevitt permitted him to incur the indebtedness without notice.

## ORDER

And now, January 2, 2007, after hearings on March 8, 2006 and May 1, 2006, and after consideration of the briefs of counsel filed May 25, 2006 and June 6, 2006, it is ordered that the courts finds in favor of the plaintiff John Clayton Smith and against the defendant John McDevitt only in the sum of $27,660, plus interest and penalties as imposed by the Internal Revenue Service until such time as this judgment is satisfied.

It is further ordered that the court finds in favor of the defendant Acorn Management Company and against the plaintiff John Clayton Smith.

It is further ordered that on the plaintiff's request for a declaration that plaintiff's partnership in Acorn Management Company ended in 1992, the request is denied.