J-A09004-15

2015 PA Super 263

| | |
|---|---|
| LYNN J. HANAWAY AND CONNIE HANAWAY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| THE PARKESBURG GROUP, LP; PARKE MANSION PARTNERS, LP; SADSBURY ASSOCIATES, LP; PARKE MANSION, LLC; AND T.R. WHITE, INC., | |
| Appellees | No. 2564 EDA 2014 |

Appeal from the Judgment Entered August 14, 2014
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2011-01522

BEFORE:  BOWES, DONOHUE, AND STABILE, JJ.

OPINION BY BOWES, J.:                    **FILED DECEMBER 15, 2015**

Lynn J. Hanaway and Connie Hanaway appeal from the judgment entered August 14, 2014, in favor of Appellees and dismissing their equity claims following a non-jury trial.  They also challenge the January 23, 2014 grant of summary judgment on their contract and tort claims.  After careful consideration, we affirm in part, reverse in part, and remand for further proceedings consistent herewith.

In May 1998, the Hanaways, together with general partner T.R. White, Inc. ("T.R. White") and several individuals and entities who are not parties herein, formed Sadsbury Associates, L.P. ("Sadsbury"), a limited partnership, for purposes of developing and selling real estate.  The

Hanaways were among several limited partners. In October 2005, Lynn Hanaway approached general partner T.R. White with a potential development project, which the parties refer to as "the Subdivision." T.R. White, the Hanaways, and the other limited partners of Sadsbury Associates, L.P., formed The Parkesburg Group, L.P. ("TPG"), to pursue the project. The Hanaways owned 32.4% of TPG.

The Subdivision was originally intended to consist of three separate properties: 1) the Davis Tract, a 43-acre parcel of unimproved land; 2) the Loue Tract, a 17-acre parcel of unimproved land; and 3) the Quarry, an 11.6-acre parcel, which was owned by the Hanaways and which TPG had an option to purchase for $180,000. TPG had options to purchase the Davis and Loue Tracts for no less than $850,000 and $800,000, respectively.

TPG acquired the Davis Tract on July 11, 2006, and obtained preliminary approvals for a townhome subdivision on that property. Thereafter, TPG received several written offers from various real estate developers for the 343 lots comprising the Davis Tract, as well as some offers that included the Loue parcel. TPG did not pursue the offers. In February 2007, the Hanaways, through their counsel, notified T.R. White that the option on the Quarry had expired and that they would no longer include that property as part of the Subdivision for development. T.R. White then called for capital to exercise the option to purchase the Loue parcel in

order to continue the project, but the Hanaways and the other limited partners refused to contribute.[1]

Lacking funds to continue with the project, T.R. White, who had "full, exclusive and complete discretion in the management and control of" TPG, advised the Hanaways by correspondence dated September 25, 2007, that it intended to get an independent appraisal and sell the Davis Tract and the option for the Loue parcel together. *See* LPA at ¶6.2. On November 29, 2007, TPG sold the Davis property and the Loue option to Parke Mansion Partners, LP ("PMP") for $1.9 million. PMP was a limited partnership created by T.R. White and all of the limited partners of TPG with the exception of the Hanaways. PMP exercised the option to purchase the Loue Tract for $800,000 the following day. The Hanaways pled that the agreement to transfer the properties to PMP was made without their knowledge or consent and that Appellees intentionally concealed this transfer from them. Complaint, ¶ 43.

On February 11, 2011, two and one-half years after the transfer of the Davis Tract and Loue option to PMP, the Hanaways filed a complaint against TPG, PMP, Sadsbury, and T.R. White, Appellees herein. They alleged breach

---

[1] The limited partnership agreement provided that the limited partners had no obligation to contribute money to the limited partnership beyond their initial capital contribution. Limited Partnership Agreement, ¶5.3.

of contract, conversion, and breach of fiduciary duty, and sought an accounting, appointment of a receiver, and alternative equitable relief. The Hanaways had originally invested $316,216.22 in TPG, but upon its liquidation only received $196,083.20. They sought to recover the $120,000 deficit in the value of their investment in the real estate development project, which they contended was sold significantly below market value by T.R. White on behalf of TPG in order to eliminate the Hanaways' ownership interest in the real estate. Partial summary judgment was granted in favor of all Appellees on the conversion and breach of fiduciary duty counts based on the expiration of the two-year statute of limitations for tort claims and on the contract count for failure to state a claim.

A bench trial commenced on July 7, 2014, on the remaining claims for equitable relief. On August 14, 2014, the court found in favor of Appellees, concluding, *inter alia*, that the doctrine of laches barred the Hanaways' equity claims. No post-trial motions were filed. The Hanaways appealed to this Court on September 3, 2014, and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Hanaways present five issues for our review:

> I.     Where a partnership agreement contained a requirement that all notices to parties be made by personal delivery or sent by registered mail and the general partner sent only a vague notice of a sale of real estate by regular mail, did the lower Court commit an error of law by ruling that the Plaintiffs received proper notice of the sale based upon constructive or actual

knowledge so as to commence the running of the statutory period of limitations?

II.     Where a deed conveys real estate from one partnership where the Plaintiffs were partners to another partnership (surreptitiously established by all the partners of the conveying partnership except the Plaintiffs) and the deed conveying the real estate sets forth only the names of the grantor LP and the grantee LP, not the underlying owners of each entity, did the Court commit an error of law by finding that the deeds provided constructive notice of the transfer to the Plaintiffs sufficient to commence the running of the statutory period of limitations?

III.     Where the Defendants concealed material facts and information concerning the transfer of the real estate, failed to comply with the notice requirements of  the partnership agreement for the transfer of the real estate, withheld information regarding ownership of the transferee entity, extensively misrepresented financial ownership regarding the distribution of the proceeds from the sale of the real estate and continued to improperly withhold information and documents after the Complaint was filed, did the Court abuse its discretion in determining that the discovery rule or the concealment doctrine did not preclude the running of the statutory period of limitations?

IV.     If the trial judge improperly ruled as a matter of law that the lapse of the statute of limitations precluded the assertion of Plaintiffs' tort claims, did the Court also commit an error of law by dismissing Plaintiffs' claims in equity based upon the theory of laches solely in reliance upon the expiration of the statute of limitations for Plaintiffs' tort claims?

V.     Where the partnership agreement guaranteed that Plaintiffs would receive 32.4% of the partnership profits and the Defendants sold real estate of the partnership in a bad faith transaction to another partnership (consisting of the same partners who owned the grantor except for Plaintiffs) at a price nearly six million dollars below fair market value, did the trial judge commit an error of law by ruling that the Defendants did not breach the duty of good faith in every contract?

Appellants' brief at 3-4.

J-A09004-15

The Hanaways' first three issues challenge the propriety of the trial court's dismissal of their conversion and breach of fiduciary duty claims as time-barred by the two-year tort statute of limitations. "Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1221 (Pa. 2002); Pa.R.C.P. 1035.2(1). In ruling on a motion for summary judgment, "the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party," and grant summary judgment only "where the right to such judgment is clear and free from all doubt." *Id*.

> On appeal,
>
> we may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is de novo. This means we need not defer to the determinations made by the lower tribunals. *Weaver v. Lancaster Newspapers, Inc.*, 592 Pa. 458, 926 A.2d 899, 902-03 (Pa. 2007) (internal citations omitted). To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record. *Id*. at 903.

*Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010).

The Hanaways mount a multi-pronged attack on the trial court's ruling that their tort claims were time barred. Initially, they contend that since TPG's notice of the transfer of the Davis Tract and Loue option by first class

- 6 -

mail did not comply with the express written notice requirements of the Limited Partnership Agreement ("LPA"), the statute of limitations did not commence to run and summary judgment was improper on that basis. Appellees counter that whether notice was sent by registered or certified mail is irrelevant to a determination of when the statute of limitations began to run since the limitations period commences when one knows or reasonably should know that a cause of action has accrued. They contend that the Hanaways cannot avail themselves of the tolling provisions of the discovery rule because they had actual knowledge as well as constructive notice of the transfers by 2008. Appellees rely upon **Dalrymple v. Brown**, 701 A.2d 164, 167 (Pa. 1997), in support of their position that the discovery rule only comes into play where the existence of the injury is unknown and cannot be ascertained within the applicable statute of limitations with the exercise of reasonable diligence.

Alternatively, the Hanaways argue that the trial court erred in relying upon **Weik v. Estate of Brown**, 794 A.2d 907 (Pa.Super. 2002), for the proposition that the recording of the deeds provided constructive notice to them of possible tort claims and started the running of the statute of limitations on those claims. In **Weik**, the recording of deeds was held to be constructive notice to plaintiff of the property transfer and breach of his option agreement for purposes of the statute of limitations. The Hanaways

- 7 -

argue that **Weik** is distinguishable because there was no contract requiring all notices to be sent by certified mail in that case.

Lastly, the Hanaways argue that the statute of limitations was tolled because T.R. White and TPG concealed and withheld information that would have enabled them to discover that the transaction was intended to eliminate their ownership. They point to evidence that they were denied access to records and that T.R. White intentionally misrepresented financial information to conceal its intentions. Appellees respond that the Hanaways had both actual knowledge and constructive notice of the facts underlying their claims. They point to the Hanaways' knowledge in 2008 that TPG sold the property to PMP for a price that the Hanaways believed was too low, and that the impetus for the sale was the Hanaways' refusal to contribute further funds for the development of the property.

The trial court concluded that the tort actions were time-barred because the Hanaways had actual knowledge of the transfer of the Davis tract and Loue option due to the receipt of correspondence notifying them of the sale. The court rejected the Hanaways' contention that the notice requirements in the limited partnership agreement distinguished **Weik**, finding them "irrelevant to the standard for assessing the start date for the running of the statute of limitations." Trial Court Opinion, 8/14/14, at 4.

The basic legal principles applicable to the statute of limitations are set forth in **Fine v. Checcio**, 870 A.2d 850 (Pa. 2005), wherein the Supreme

- 8 -

Court examined the application of both the discovery rule and the doctrine of equitable tolling due to fraudulent concealment. *Wilson v. El-Daief*, 964 A.2d 354 (Pa. 2009).

> *Fine* reflects the general rule that a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted. In certain cases involving latent injury, and/or instances in which the causal connection between an injury and another's conduct is not apparent, the discovery rule may operate to toll the statute of limitations until the plaintiff discovers, or reasonably should discover, that she has been injured and that her injury has been caused by another party's conduct. *Fine* also reflects that the determination concerning the plaintiff's awareness of the injury and its cause is fact intensive, and therefore, ordinarily is a question for a jury to decide. However, courts may resolve the matter at the summary judgment stage where reasonable minds could not differ on the subject.

*Id*. at 361-62 (citations and footnote omitted). As this Court noted in *Coleman v. Wyeth Pharmaceuticals, Inc.*, 6 A.3d 502, 511 (Pa.Super. 2010) (quoting in part *Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 468 A.2d 468, 471 (Pa. 1983)), "[i]f the injured party could not ascertain when he was injured and by what cause within the limitations period, 'despite the exercise of reasonable diligence,' then the discovery rule is appropriate."

Due diligence is ascertained by an objective standard, *Coleman*, *supra*, and to "demonstrate reasonable diligence, a plaintiff is required to establish that he exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the

protection of their own interests and the interests of others.'" ***Wilson***, ***supra*** at 363 n.6 (quoting in part ***Cochran v. GAF Corp.***, 666 A.2d 245, 249 (Pa. 1995)). The party seeking application of the discovery doctrine bears the burden of proof. ***Wilson***, ***supra***; ***Coleman***, ***supra***.

We agree with the trial court that the technical deficiency in the notice is of no consequence in our statute of limitations analysis. In determining whether the discovery rule operated to toll the running of the statute of limitations on tort claims, breach of a contractual notice provision is only relevant to the extent that it demonstrates actual lack of notice or knowledge. The discovery rule only will operate to toll the running of the statute of limitations where, despite due diligence, one is unaware that he has been injured and has a cause of action.

Although the Hanaways did not receive notice of the sale by registered or certified mail return receipt requested, it is undisputed that they received notice by first class mail and had actual knowledge of the transfer. The Hanaways admitted that they learned by May 2008 that TPG transferred to PMP the Loue option, and by December 2008, the Davis tract. Answers to Interrogatories, Exhibit 9 at No. 7. The Hanaways' daughter conducted an online deed search in 2008 that revealed PMP's purchase of both properties and she admitted that she showed the information to Mr. Hanaway. ***Id***., Exhibit 10, at 110-11. In addition, counsel for the Hanaways received an appraiser's report on February 15, 2008, concluding that the sale of the

Davis tract to PMP for $1.9 million was far below that property's fair market value.[2] Moreover, as early as May 8, 2008, Mr. Hanaway referenced the transfer in a memorandum to counsel and complained that he received no notice, was not included in the transaction, and questioned the legality of the sale. Thus, there is no genuine issue of fact regarding the Hanaways' notice or knowledge of the sale of the Davis tract and Loue option to PMP more than two years prior to the filing of the instant lawsuit.

The Hanaways argue, however, that knowledge or notice of the sales was not sufficient to apprise them of possible claims. They maintain that the recorded deeds merely listed the buyer as PMP and did not list the owners of PMP. They contend that they could not institute suit earlier because they did not know whether they were partners in PMP. The trial court found, however, that the Hanaways failed to identify a single fact that would reasonably suggest that they were partners in PMP. They admittedly had not signed a partnership agreement for PMP, contributed to that partnership, or received a tax return from that entity. Deposition of Lynn Hanaway, 4/4/13, at 163-66. Furthermore, the court noted that they actually filed suit prior to the date they claimed to have learned who owned PMP, which the

---

[2] The Hanaways' appraiser assigned a market value of $8.5 million to the unimproved Davis and Loue properties, which had been approved for the construction of 323 townhouses.

court viewed as proof that ignorance of PMP's owners was no impediment to bringing the action. Order, 1/23/14, at n.1.

Where, as here, the Hanaways had both constructive notice and actual knowledge of the transfers, we agree that they were in possession of sufficient facts to prompt inquiry into the effect of the transfer on their own interests. Once the Hanaways knew that TPG sold the Davis tract and Loue option to PMP for what they believed to be less than market value, the limitations period commenced to run. We find no merit in the Hanaways' arguments that the discovery rule operated to toll the statute of limitations.

Nor did the Hanaways identify any misrepresentation on the part of Appellees tantamount to fraudulent concealment that purportedly caused them to limit their inquiry or relax their vigilance and toll the statute of limitations. The record substantiates that the Hanaways were aware that, due to a lack of working capital, T.R. White intended to sell the property. Correspondence between the Hanaways and T.R. White suggests that they were at odds over the use of the property. The record reveals that the Hanaways sought legal advice early on, hired an appraiser, and checked the property transfers. This conduct is inconsistent with that of parties complacent in the belief that their partners were acting in their best interest. Thus, the Hanaways have not offered facts that would operate to toll the tort statute of limitations based on fraudulent concealment. The tort claims were asserted after the expiration of the two-year statute of limitations, and we

find no error in the trial court's grant of summary judgment in favor of Appellees on that basis.

Next, the Hanaways allege that the trial court erred in dismissing their equity claims based upon the doctrine of laches. The mere passage of time is not enough, according to the Hanaways, for the defense to apply. The Hanaways argue that Appellees had the burden of showing prejudice due to the five-month delay, which they failed to do. **See Young v. Hall and Behrand**, 218 A.2d 781 (Pa. 1966). Furthermore, the Hanaways maintained they were entitled to trust their partners and relax their vigilance due to the existence of a fiduciary relationship between them. The Hanaways contend that they were not required to strictly comply with statutes of limitation in light of the special relationship that lulled them into believing that their partners' actions were proper.

Appellees counter that the Hanaways waived any objection to the trial court's finding of laches by failing to file a post-trial motion within ten days after the court's decision in the non-jury trial. **See** Pa.R.C.P. 227.1(c). Such a motion is required in an equity proceeding. **See Chalkey v. Roush**, 805 A.2d 491, 494 (Pa. 2002). Furthermore, the Hanaways compounded that waiver by failing to identify this as error in their Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Consequently, the trial court did not address this issue in its Rule 1925(a) opinion.

Additionally, Appellees point out that the Hanaways' equity claims for appointment of a receiver and equitable accounting were denied on additional bases, which they have not challenged on appeal. Thus, Appellees contend, even if there was merit in the Hanaways' laches argument, it would not constitute reversible error. Finally, Appellees submit that the argument fails on the merits. They offer authority to the effect that laches typically follows the statute of limitations. *See Ebbert v. Plymouth Oil Co.*, 34 A.2d 493, 495 (Pa. 1943); *Ritter v. Theodore Pendergrass Teddy Bear Prods., Inc.*, 514 A.2d 930, 934 (Pa.Super. 1986).

Although we find merit in the Hanaways' position that a laches defense involves a showing of prejudice, and that arguably no showing was made herein, the Hanaways' failure to file a motion for post-trial relief challenging the court's finding in this regard is fatal. Post-trial motions must be filed within ten days after the filing of a decision in the case of a trial without a jury. Pa.R.C.P. 227.1(c)(2). The failure to raise an issue in a post-trial motion results in waiver of the issue on appeal. *Bensinger v. Univ. of Pittsburgh Med. Ctr.*, 98 A.3d 672 (Pa.Super. 2014). We agree with the trial court that the Hanaways failed to preserve this claim.

We turn now to the Hanaways' final claim that the trial court erred in granting summary judgment and dismissing their breach of contract claim. The breach of contract claim was originally asserted against TPG, Sadsbury, and their general partner, T.R. White, but subsequently focused on T.R.

White and its improper use of a capital call directed to the Hanaways, inadequate notice of sale of the property, and sale of TPG property at a price $6 million below market value. The Hanaways maintain that T.R. White breached both the express terms of the limited partnership agreement and its implied covenant of good faith and fair dealing, and that the trial court erroneously determined, as a matter of law, that T.R. White's exclusive right to manage the business of TPG negated any duty of good faith implied in the partnership agreement.[3] The Hanaways assert that where an obligation necessary to a party's enjoyment of the benefits of the contract is not specifically provided, it may be implied to prevent a bad faith breach. They argue that T.R. White was obligated to exercise its management powers in good faith and in a manner that would permit the Hanaways to enjoy the profits due them. The sale of TPG property to PMP at a price well below market value resulted in a substantial loss of their original investment and eliminated any profit to them while benefitting T.R. White and the other limited partners operating as PMP.

T.R. White counters that the trial court properly found that it had the exclusive right and discretion to manage the partnerships, including the sale of property, and that the Hanaways failed to identify any provision of the

---

[3] We read the Hanaways' pleadings as alleging a breach of contract premised on T.R. White's bad faith sale of TPG property.

LPA that was breached by selling the Davis tract and Loue option below market value. Order, 1/23/14, at n.1. Specifically, the trial court found that the Hanaways failed to plead that the capital call and lack of certified mail notice of the sale of property constituted breaches of the partnership agreement, and additionally found no merit in those claims. Trial Court Opinion, 10/30/14, at 5-7. Finally, the trial court found that breach of the implied covenant of good faith and fair dealing could not override the express terms of the contract conferring unfettered discretion upon the general partner to sell partnership property. *Id*. at 8. Since we conclude that T.R. White was bound to act in good faith and deal fairly in the performance of his duties under the LPA, including the exercise of its discretion to sell the properties, we disagree with the trial court's latter conclusion.

The intermediate appellate courts of this Commonwealth have applied the Restatement (Second) of Contracts § 205, which provides that, "Every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." This Court invoked § 205 in *Baker v. Lafayette College*, 504 A.2d 247 (Pa.Super. 1986), and held that where the College expressly provided in an employment contract for a comprehensive evaluation and review process, it had a limited duty to conduct that evaluation in good faith. We noted that the College's obligation to act in good faith extended to the performance of the duties it assumed

under the contract and found this consistent with the general duty of contracting parties to perform their contractual obligations in good faith as set forth in the Restatement (Second) of Contracts §205.[4]

In ***Somers v. Somers***, 613 A.2d 1211 (Pa.Super. 1992), after noting that the general duty of good faith and fair dealing of § 205 had been adopted earlier in ***Baker***, ***supra***, and ***Creeger Brick & Building Supply Inc. v. Mid-State Bank & Trust Co.***, 560 A.2d 151, 153 (Pa.Super. 1989), this Court applied it to a consulting agreement. In that case, an uncle sold a portion of his stock in his construction company to his nephew and

_____

[4] In ***Ash v. Cont'l Ins. Co.***, 932 A.2d 877, 883 (Pa. 2007), our High Court noted "considerable disagreement over the applicability of the implied duty of good faith." It observed that the Superior Court opined in ***Herzog v. Herzog***, 887 A.2d 313, 317 (Pa.Super. 2005) and ***John B. Conomos, Inc. v. Sun Company, Inc.***, 831 A.2d 696, 705-06 (Pa.Super. 2003), that Pennsylvania has adopted § 205 and applied it to every contract. The Commonwealth Court also has recognized the § 205 implied covenant, but limited its application. ***See Agrecycle, Inc. v. City of Pittsburgh***, 783 A.2d 863 (Pa.Cmwlth. 2001) (a separate duty of good faith performance of contracts "may not be implied where (1) a plaintiff has an independent cause of action to vindicate the same rights with respect to which the plaintiff invokes the duty of good faith; (2) such implied duty would result in defeating a party's express contractual rights specifically covered in the written contract by imposing obligations that the party contracted to avoid; or (3) there is no confidential or fiduciary relationship between the parties."). ***Department of Transportation v. E-Z Parks, Inc.***, 620 A.2d 712 (Pa.Cmwlth. 1993). The ***Ash*** Court also pointed out that several Justices have stated in non-precedential opinions that the § 205 duty is implied in every contract. ***See Bethlehem Steel Corp. v. Litton Industries, Inc.***, 488 A.2d 581, 600 (Pa. 1985) (Zappala, J., Opinion in Support of Reversal); ***Frickert v. Deiter Bros. Fuel Co.***, 347 A.2d 701, 705 (Pa. 1975) (Pomeroy, J., concurring). However, the ***Ash*** Court declined to discuss the issue, as it was not before the Court.

surrendered his remaining shares for redemption, resulting in the nephew becoming the sole shareholder and president of the corporation. At the same time, uncle was hired as a consultant pursuant to an agreement that gave him the authority to act with the nephew regarding a particular construction project. In addition to monthly consulting fees, uncle was to receive fifty percent of the net profits from that project. At the conclusion of construction, there were outstanding claims among the corporation, the Office of General Services, and various subcontractors. When uncle and nephew disagreed over the handling of these claims, nephew terminated his uncle's employment. Uncle filed a suit alleging that his nephew showed a lack of good faith and due diligence in the resolution of the dispute. He claimed that nephew settled the corporation's claim for significantly less than was owed, thereby depriving uncle of approximately $3 million as his share of the net profits. Although uncle did not assert a breach of a specific contractual provision, this Court held that the uncle stated a claim for breach of contract "based on the implied obligation to act in good faith and do nothing to destroy the rights of the other party to receive the fruits of the agreement[,]" *id*. at 1215, and reversed the grant of a demurrer.

Years later, in *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 434 (Pa. 2001), our Supreme Court agreed with this Court's statement in *Baker*, *supra*, that "when an employer expressly provides in an employment contract for a comprehensive evaluation and review process,

- 18 -

a court may look to the employer's good faith to determine whether the employer has in fact performed those contractual duties." *Id*. at 255. Without referencing § 205, our High Court pointed out that, "this obligation of good faith is tied specifically to and is not separate from the duties a contract imposes on the parties" and "is akin to the contract doctrine of necessary implication." *Id*.  It described the doctrine:

> In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

*Murphy*, *supra* at 434 n.11 (quoting *Slater v. Pearle Vision Center*, 546 A.2d 676, 679 (Pa.Super. 1988) (quoting *Frickert v. Deiter Bros. Fuel Co. Inc.*, 347 A.2d 701 (Pa. 1975) (Pomeroy, J., concurring))).

Just two years later, this Court decided *John B. Conomos, Inc. v. Sun Company, Inc.*, 831 A.2d 696 (Pa.Super. 2003).  Sun contracted with Conomos for industrial painting services at its refinery.  Sun's inspector found the surface preparation of the pipe by Conomos to be unacceptable and demanded preparation that Conomos believed exceeded the industry standard and agreed upon scope of work.  Conomos complied with the additional requirements, but incurred added expense.  When Conomos sought additional compensation and Sun did not respond, Conomos left the job and Sun cancelled the contract.  Conomos sued for the balance due

under the contract, the cost of the additional preparation required, and asserted a claim under the Contractor and Subcontractor Payment Act.

At issue was whether Sun owed a duty of good faith to Conomos, whether that duty was breached, and if so, what implications that breach had on the limited damages clause in the contract. We found that there was an implied duty of good faith in Sun's contractual duty to inspect the surface preparation performed by Conomos so as not to "defeat Conomos's reasonable expectation that work of sufficient quality will be compensated as agreed." **Conomos, supra** at 707. We explained that, "[b]oth the implied covenant of good faith and the doctrine of necessary implication are principles for courts to harmonize the reasonable expectations of the parties with the intent of the contractors and the terms in their contract." **Id**. The doctrines "serve to imply terms that the parties would have spelled out had they foreseen their need, a breach of such implied terms is equivalent to a breach of any other provision in the contract." **Id**. at 708. **See also Herzog v. Herzog**, 887 A.2d 313 (Pa.Super. 2005) (characterizing the implied term of fair dealing in § 205 as "the principle fundamental to contract law" and finding such a duty in marital settlement agreement).

As these cases demonstrate, a breach of the covenant of good faith and fair dealing is a breach of contract action, not an independent action for

breach of a duty of good faith.[5]  ***LSI Title Agency, Inc. v. Evaluation Servs.***, 951 A.2d 384, 391 (Pa.Super. 2008).  The implied covenant of good faith and fair dealing attaches to existing contractual obligations; it does not add new contractual duties.  In essence, the duty to act in good faith and deal fairly infuses the parties' performance of their express contractual obligations.  In determining whether there has been a breach of contract, we evaluate the conduct of a party through the lens of good faith and fair dealing.

With slight variances due to context, good faith is understood to mean "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness."  Restatement (Second) of Contracts §205, Comment a.  In ***Cable & Associates Ins. Agency v. Commercial Nat'l Bank of Pennsylvania***, 875 A.2d 361, 364 (Pa.Super. 2005) (quoting ***Gorski v. Smith***, 812 A.2d 683, 710 (Pa.Super.

---

[5] The dissent's contention that the Hanaways abandoned their claim that T.R. White breached the express terms of the partnership agreement by arguing breach of an implied duty of good faith and fair dealing is incorrect. On the contrary, the Hanaways' breach of contract claim is premised on T.R. White's bad faith performance of its contractual obligations.  Nor are we recognizing a new cause of action for breach of such an implied covenant. When a party fails to perform its contractual obligations in good faith, an action for breach of contract is the remedy.

2003)), we defined the duty of good faith as "[h]onesty in fact in the conduct or transaction concerned."

The contract at issue herein is the LPA. It provides that "the business and affairs of the Partnership shall be controlled by the General Partner." LPA, Art. VI, ¶6.1. In addition, "[t]he General Partner shall have full, exclusive and complete discretion in the management and control of the business of the Partnership, and shall have all such other powers of a general partner in a partnership formed under Pennsylvania law without limited partners, the exercise of which are consistent with the Business of the Partnership." LPA, Art. VI, ¶6.2; *see also Clement v. Clement*, 260 A.2d 728 (Pa. 1970); *Jarl Invs., L.P. v. Fleck*, 937 A.2d 1113 (Pa.Super. 2007).[6]

It is undisputed that T.R. White owed a fiduciary duty to TPG and its limited partners. *See* 15 Pa.C.S. § 8334; *see also eToll, Inc. v. Elias/Savion Adver.*, 811 A.2d 10, 22 (Pa.Super. 2002) (A fiduciary duty arises from a "special relationship" between the parties involving "confidentiality, the repose of special trust, or fiduciary responsibilities."). However, any remedy for T.R. White's alleged breach of fiduciary duty was

---

[6] Generally, unless otherwise provided in the limited partnership agreement, a general partner of a limited partnership has the same rights, powers, and restrictions as a partner in a partnership without limited partners. 15 Pa.C.S. § 8333.

grounded in tort and was time-barred. The question before us is whether Pennsylvania law imputes the same implied duty of good faith and fair dealing in the performance of contractual duties in a limited partnership agreement as in other contracts. In performing its management duties, did T.R. White have a duty to act in good faith and consistently with the limited partners' expectations? For the reasons that follow, we answer that question in the affirmative, finding no reason to treat a limited partnership agreement differently than any other contract.[7]

The highest court in our neighboring state of Delaware explained the difference between the covenant of good faith and fair dealing and a fiduciary duty in the context of a limited partnership agreement in *Gerber v. Enterprise Products Holdings, LLC*, 67 A.3d 400 (Del. 2013) (overruled on other grounds by *Winshall v. Viacom Intern., Inc.*, 76 A.3d 808 (Del. 2013)). The distinction is significant under Delaware law because parties to limited partnership agreements are permitted to contractually "expand,

---

[7] The dissent maintains that limited partnership contracts are unique because limited partnerships are statutory creations. It implies that absent legislative recognition of an implied covenant in a limited partnership agreement, none exists. The dissent does not cite any authority for that proposition. In light of the fact that the legislature is presumed to know the existing law when it passes a statute, we submit that the fact the legislature did not specifically abrogate an implied covenant of good faith and fair dealing in a limited partnership agreement suggests that it intended to include the covenant in such contracts.

restrict, or eliminate any fiduciary duties that a person may owe." Delaware Revised Uniform Limited Partnership Act, 6 Del. C. § 17-1101(d). That same section also provides, however, that the parties cannot contract to eliminate the implied contractual covenant of good faith and fair dealing. *Id*. Thus, in Delaware, the implied covenant of good faith and fair dealing provides a viable alternate remedy in contract where the fiduciary duty has been restricted.[8]

_____

[8] The *Gerber* Court explained the difference between a fiduciary duty and the implied covenant of good faith and fair dealing:

> Under a fiduciary duty or tort analysis, a court examines the parties as situated at the time of the wrong. The court determines whether the defendant owed the plaintiff a duty, considers the defendant's obligations (if any) in light of that duty, and then evaluates whether the duty was breached. Temporally, each inquiry turns on the parties' relationship as it existed at the time of the wrong.
>
> . . . .
>
> An implied covenant claim, by contrast, looks to the past. It is not a free-floating duty unattached to the underlying legal documents. It does not ask what duty the law should impose on the parties given their relationship at the time of the wrong, but rather what the parties would have agreed to themselves had they considered the issue in their original bargaining positions at the time of contracting. . . . [Fair dealing] is rather a commitment to deal "fairly" in the sense of consistently with the terms of the parties' agreement and its purpose. Likewise, "good faith" does not envision loyalty to the contractual counterparty, but rather faithfulness to the scope, purpose, and terms of the parties' contract.

*(Footnote Continued Next Page)*

The ***Gerber*** plaintiffs alleged that the general partner defendant breached its express contractual duties and the implied covenant of good faith and fair dealing under a limited partnership agreement. Specifically, the plaintiffs pled that the general partner exercised its discretion to use the special approval process in bad faith. The chancery court refused to permit recovery on the breach of implied covenant theory; rather, it found the implied covenant was only a "gap filler" that could not form the basis of a claim based on conduct expressly authorized by a limited partnership agreement.

The Delaware Supreme Court rejected that reasoning. It held that "[w]hen exercising a discretionary right, a party to the contract must exercise its discretion reasonably." ***Gerber***, ***supra*** at 419 (quoting ***ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC***, 50 A.3d 434, 442 (Del. Ch. 2012), *aff'd in part, rev'd in part on other grounds*, 68 A.3d 665 (Del. 2013)). The court explained that an implied covenant "seeks to enforce the parties' contractual bargain by implying only those terms that the parties would have agreed to during their original negotiations if they had thought to address them." ***Gerber***, ***supra***

(Footnote Continued) ———————————

***Gerber v. Enterprise Products Holdings, LLC***, 67 A.3d 400, 418-19 (Del 2013) (quoting ***ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC***, 50 A.3d 434, 440-42 (Del. Ch. 2012), *aff'd in part, rev'd in part on other grounds*, 68 A.3d 665 (Del. 2013).

at 418. It protects the parties' reasonable expectations by looking retrospectively to discern what the parties would have agreed to had they considered the issue in their original bargaining rather than at the time of the breach. Thus, the court looked at the reasonable expectations of the parties when contracting to see if the general partner acted unreasonably, thereby frustrating the fruits of the bargain that Gerber reasonably expected.

In **Winshall**, **supra**, the Supreme Court of Delaware explained the limited scope and function of the implied covenant. The covenant cannot be applied to afford the plaintiffs "contractual protections that 'they failed to secure for themselves at the bargaining table.'" **Winshall**, **supra** at 816 (quoting **Aspen Advisors LLC v. United Artists Theatre Co.**, 861 A.2d 1251, 1260 (Del. 2004)). "Rather, a party may only invoke the protections of the covenant when it is clear from the underlying contract that 'the contracting parties would have agreed to proscribe the act later complained of . . . had they thought to negotiate with respect to the matter.'" **Id**. (quoting **Dunlap v. State Farm Fire & Cas. Co.**, 878 A.2d 434, 442 (Del. 2005)). In **Winshall**, the court refused to find an implied covenant in a merger agreement to maximize post-merger earn-out payments to selling shareholders, finding that the parties could and should have contracted for that at the time of the merger.

Pursuant to the LPA herein, T.R. White was responsible for managing and controlling the limited partnership and it was given broad discretion in doing so. It is the Hanaways' contention, however, that they reasonably expected that the general partner would not exercise that discretion in bad faith by selling the assets of TPG at less than fair market value for its own benefit and that of like-minded limited partners to their detriment and that of TPG.[9] The situation herein is much like the one in **Gerber**, **supra**, and

_____

[9] The dissent takes the position that the covenant is not implied in every contract, and in support thereof cites considerable authority including **Cable & Associates Ins. Agency, Inc. v. Commercial Nat. Bank of Pennsylvania**, 875 A.2d 361 (Pa.Super. 2005) for the proposition that no covenant of good faith exists between lenders and borrowers. The dissent misapprehends **Cable**. We held therein that there was no separate duty of good faith between a lender and a borrower based on the legal relationship, and no need to create one, **"due to the existence of this 'good faith' cause of action sounding in contract."** **Id**. at 364 (emphasis added). We acknowledged that a borrower could plead sufficient facts to state a claim "that a lender violated its general duty of 'good faith' arising out of the law of contracts." **Id**.; **see**, **e.g.**, **Corestates Bank, N.A. v. Cutillo**, 723 A.2d 1053 (Pa.Super. 1999).

Furthermore, the dissent contends that since an implied covenant cannot trump the express language of a contract or impose additional terms. It adds that no implied covenant exists in the instant case because the LPA imposed specific limitations upon T.R. White's discretion. We disagree. The LPA expressly conferred upon T.R. White complete and exclusive discretion in the management of TPG and the authority to buy and sell partnership property. T.R. White pointed to that unfettered discretion in contending that sale of the properties did not violate the terms of the LPA. **See** Motion for Summary Judgment, at ¶¶60, 63 (maintaining that T.R. White did not breach the contract as it was within its right to sell the properties by virtue of its exclusive and complete discretion to manage the partnership). The Hanaways denied that T.R. White had absolute discretion and averred that
_(Footnote Continued Next Page)_

we find that reasoning persuasive.[10]  Despite the fact that the limited partnership agreement therein expressly conferred discretion upon the general partner to undertake the special approval process, the Delaware court recognized an implied duty to exercise that discretion in good faith. Herein, although T.R. White had discretion in the management of TPG and the sale of the properties, the implied covenant of good faith and fair dealing imposed a duty to exercise that contractual obligation in good faith.  Thus, we find that the implied covenants of good faith and fair dealing operate in this circumstance and color the determination of whether T.R. White breached the LPA.

*(Footnote Continued)* _____

its conduct was bound by the covenants of good faith and fair dealing.  ***See*** Answer of Plaintiffs to the Defendants' Motion for Partial Summary Judgment on Counts I, II, and III of Plaintiffs' Complaint, at ¶5.  We agree that the implied covenant operates to require T.R. White to perform its contractual duties in good faith.  Hence, in determining whether there has been a breach of the LPA, T.R. White's conduct must be viewed through that lens.

[10]  We recognize that the Delaware limited partnership statute is different from Pennsylvania's statute.  Contrary to the dissent's assertion, we are not adopting Delaware law.  Both states recognize an implied covenant of good faith and fair dealing in contracts generally and recent Delaware cases offer insight into how the covenant operates in the context of a limited partnership agreement.  We find Delaware's view that the covenant does not add new terms but acts to require a contracting party to exercise its discretion reasonably and to protect the other party's reasonable expectations to be consistent with Pennsylvania's view of such a covenant in ***Baker v. Lafayette College***, 504 A.2d 247 (Pa.Super. 1986), ***Somers v. Somers***, 613 A.2d 1211 (Pa.Super. 1992), ***Murphy v. Duquesne Univ. of the Holy Ghost***, 777 A.2d 418, 434 (Pa. 2001), ***John B. Conomos, Inc. v. Sun Company, Inc.***, 831 A.2d 696 (Pa.Super. 2003), and the other Pennsylvania cases cited herein.

The only issue remaining is whether the record contains sufficient evidence of such a breach to create a jury question.[11]   In opposition to summary judgment on their contract claim, the Hanaways proffered the following evidence.  On July 1, 2005, the Nolen Group expressed interest in purchasing the Davis tract for a total consideration of $10,496,000.  Memorandum of Plaintiffs in Opposition to the Defendant' Motion for Summary Judgment, Exhibit 2.  By correspondence dated July 21, 2005, Heritage Land Group submitted a draft agreement for the purchase of 328 approved lots in the Davis tract for $9,500,000.  *Id*.   The Gambone Development Company submitted a letter of intent to purchase the Davis property for $38,000 per townhouse unit for 328 units.  *Id*.   The McKee Group proposed a purchase of the Davis property, which it described as sixty-one acres in Parkesburg Borough, consistent with both the Davis and Loue tracts, for $21,325,000.  *Id*.   Ryan Homes expressed interest in purchasing the 328 fully-improved townhome lots for $65,000 each, which totals $21,320,000.  TPG ultimately sold the Davis tract for $1.9 million and

---

[11] As the dissent correctly points out, T.R. White is only subject to liability in contract for "intentional violation of any term of this Agreement."  LPA at § 6.9.  The pleadings and the evidence, taken in the light most favorable to the Hanaways, are sufficient to present a genuine issue of material fact as to whether T.R. White intentionally violated the LPA.

the Loue option for ten dollars, to PMP.[12]  T.R. White does not dispute that PMP, a limited partnership consisting of all the partners of TPG with the exception of the Hanaways, was formed with the intention of removing the Hanaways from any interest in the Davis tract and Loue option.

Taking the evidence and its reasonable inferences in the light most favorable to the Hanaways as we must do in reviewing the grant of summary judgment, we find genuine issues of material fact that warrant submission of this breach of contract claim to the factfinder.  The evidence, if credited, could support a finding that T. R. White orchestrated the sale of TPG's assets to PMP at a price that was below fair market value, that it did so for its own benefit and that of the other limited partners, and to the financial detriment of the Hanaways and TPG.  The factfinder could reasonably find that this conduct constituted a breach of T.R. White's contractual duty to exercise its discretion in the management of the limited partnership in good faith.

For the foregoing reasons, we affirm the grant of summary judgment on the tort claims for conversion and breach of fiduciary duty based on the statute of limitations.  The Hanaways' claim that the trial court erred in dismissing their equity claims due to laches is waived since they failed to file

---

[12]  T.R. White secured an appraisal of the value of the Davis and Loue tracts in fee simple.  As of the date of the sale, the tracts were appraised at $2,700,000.  PMP purchased the Davis Tract and the option for the Loue Tract for $1.9 million and spent $800,000 to exercise the option to purchase the Loue Tract.

a post-trial motion pursuant to Pa.R.C.P. 227.1. However, we reverse the grant of summary judgment on the contract claim for breach of the implied covenant of good faith and fair dealing as to T.R. White, and remand for further proceedings on that claim.

Judgment affirmed in part and reversed in part. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judge Stabile joins this Opinion.

Judge Donohue files a Concurring and Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2015