J-A07006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ROCK FERRONE AND MARCIA FERRONE, HIS WIFE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| HUNTINGTON BANKSHARES INC., HUNTINGTON NATIONAL BANK INC., HUNTINGTON NATIONAL BANK, | |
| Appellees | No. 1279 WDA 2016 |

Appeal from the Order August 2, 2016
In the Court of Common Pleas of Butler County
Civil Division at No(s): A.D. No. 14-10463

BEFORE:  OLSON, STABILE and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 11, 2017**

Rock and Marcia Ferrone ("Appellants") appeal from the August 2, 2016 order sustaining Huntington Bankshares Inc.'s, Huntington National Bank Inc.'s, and Huntington National Bank's (collectively "Huntington's") preliminary objections.  We affirm.

The factual background of this case is as follows.  In 1998, Mr. Ferrone purchased an airport through his company, Rock Airport of Pittsburgh, LLC ("RAP").  Over the past two decades, RAP and Appellants have encountered significant financial difficulties.  As a result, RAP and Appellants have initiated a litany of legal proceedings relating to this financial trouble.  **E.g.**, **Ferrone v. Onorato**, 118 A.3d 495, 2015 WL 5453191 (Pa. Cmwlth. 2015)

_____

* Retired Senior Judge assigned to the Superior Court

(unpublished memorandum), *appeal denied*, 140 A.3d 14 (Pa. 2016); ***Ferrone v. Cardiello*** (***In re Rock Airport of Pittsburgh, LLC***), 2014 WL 7272259 (W.D. Pa. Dec. 18, 2014), *aff'd*, 641 F. App'x 117 (3d Cir. 2016); ***Rock Airport of Pittsburgh, LLC v. Mgmt. Sci. Assocs., Inc.*** (***In re Rock Airport of Pittsburgh, LLC***), 2014 WL 5308066 (W.D. Pa. Oct. 16, 2014); ***Ferrone v. Onorato***, 2007 WL 2973684 (W.D. Pa. Oct. 9, 2007), *aff'd*, 298 F. App'x 190 (3d Cir. 2008). As we write primarily for the parties, we only set forth those facts necessary for our disposition of the instant appeal.

On November 30, 2000, Appellants personally guaranteed a $3,000,000.00 loan that Huntington[1] had previously made to RAP. Thereafter, on March 22, 2004, Huntington loaned Mr. Ferrone $427,000.00. Appellants and RAP also secured several other loans from Huntington. One or more of these loans were secured by a mortgage on Appellants' residence.

As noted above, RAP and Appellants soon encountered financial problems. On April 30, 2009, RAP filed for bankruptcy in the Western District of Pennsylvania. ***See In re Rock Airport of Pittsburgh, LLC***, 09bk23155 (Bankr. W.D. Pa.).

---

[1] This loan was made with a predecessor to Huntington. For simplicity, throughout this memorandum we refer to Huntington's predecessors as Huntington.

On May 22, 2013, Huntington filed three complaints confessing judgment against Appellants because Appellants defaulted on the loans described above. Appellants filed petitions to strike or open the three judgments and the trial court denied those petitions. This Court affirmed the trial court's orders and our Supreme Court denied allowance of appeal. *Huntington Nat. Bank v. Ferrone*, 116 A.3d 705, 2014 WL 10556365 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 117 A.3d 1281 (Pa. 2015); *Huntington Nat. Bank v. Ferrone*, 116 A.3d 705, 2014 WL 10556360 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 117 A.3d 1281 (Pa. 2015); *Huntington Nat. Bank v. Ferrone*, 116 A.3d 705, 2014 WL 10556358 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 117 A.3d 1281 (Pa. 2015).

On March 28, 2014, RAP's bankruptcy trustee filed a motion seeking bankruptcy court approval to sell RAP's assets to Alaskan Property Management Company, LLC ("Alaskan"). On June 20, 2014, RAP filed a motion seeking approval of a reorganization plan which would not see its assets sold to Alaskan. On July 11, 2014, Appellants aver that they and RAP entered into an oral settlement agreement with Huntington. The agreement allegedly included the following terms: Huntington would sell a portion of its bankruptcy claims to Trib-Total Media; Huntington would support RAP's reorganization plan; any and all claims between the parties would be waived; Appellants and RAP would not object to Huntington filing an

amended proof of claim; and, the agreement was subject to bankruptcy court approval.

This oral agreement was put in writing and a motion to approve the settlement agreement was filed the same day.[2] On August 19, 2014, Mr. Ferrone objected to the settlement agreement. As such, the bankruptcy court did not approve the settlement agreement. On September 16, 2014, the bankruptcy court granted RAP's trustee's motion to sell RAP's assets to Alaskan.

The procedural history of this case is as follows. On May 6, 2014, Appellants instituted the instant action by filing a writ of summons. On April 24, 2015, Appellants filed a *pro se* complaint. After Huntington filed preliminary objections, Appellants filed an amended *pro se* complaint. On January 6, 2016, Huntington filed a second set of preliminary objections. On March 23, 2016, the trial court sustained Huntington's preliminary objections; however, it granted Appellants the right to file a second amended complaint.

On April 11, 2016, Appellants filed a counseled second amended complaint. Huntington filed a third set of preliminary objections and, on May

---

[2] Attorney Robert O. Lampl, as RAP's counsel, electronically signed and filed a motion seeking bankruptcy court approval of the written settlement agreement. **See** Third Amended Complaint, 5/23/16, at 9 (averring that Attorney Lampl filed a motion seeking bankruptcy court approval of the written settlement agreement); **id.** at Exhibit G (a copy of that motion). In their third amended complaint, Appellants aver that Mr. Lampl was also their attorney at the time. **Id.**, at 7, ¶ 47.

23, 2016, Appellants filed a third amended complaint. Huntington filed a fourth set of preliminary objections which the trial court sustained on August 2, 2016. This timely appeal followed.[3]

Appellants present four issues for our review:

1. [Did Appellants adequately plead] a breach of contract claim?

2. [Did Appellants adequately plead] a claim of promissory estoppel?

3. [Did Appellants adequately plead] a claim of fraud in the inducement?

4. [Did Appellants adequately plead] a claim for tortious interference with contractual relations?

Appellant's Brief at 5.[4]

"Our standard of review of an order of the trial court [sustaining] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." *Freundlich & Littman, LLC v. Feierstein*, 157 A.3d 526, 530 (Pa. Super. 2017) (internal alteration and citation omitted).

---

[3] On August 29, 2016, the trial court ordered Appellants to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On September 19, 2016, Appellants filed their concise statement. On September 21, 2016, the trial court issued an order stating that the reasons for sustaining Huntington's preliminary objections appeared as of record in its opinion accompanying its August 2, 2016 order. All of Appellants' issues were included in their concise statement.

[4] We have re-numbered the issues for ease of disposition.

"Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom." ***P.J.A. v. H.C.N.***, 156 A.3d 284, 287 (Pa. Super. 2017) (*per curiam*) (citation omitted). Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief." ***Martin v. Holy Spirit Hosp.***, 154 A.3d 359, 362 (Pa. Super. 2017) (citation omitted). "If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections." ***Khawaja v. RE/MAX Cent.***, 151 A.3d 626, 630 (Pa. Super. 2016) (citation omitted).

In their first issue, Appellants argue that they adequately pled a breach of contract claim. "It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." ***Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.***, 137 A.3d 1247, 1258 (Pa. 2016) (citation omitted).

Appellants claim that Huntington breached the parties' oral contract to support their reorganization plan, release all claims against Appellants, and

- 6 -

to sell their proofs of claim to Trib-Total Media. In support of this argument, Appellants rely upon a string of emails between Mr. Ferrone, his counsel, and Huntington's counsel. Appellants argue that these emails set forth the terms of the parties' oral contract. This argument fails because bankruptcy court approval was a condition precedent to Huntington's obligation to perform under the contract.[5]

As this Court has explained:

A condition [precedent] is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due. Performance of a duty subject to a condition [precedent] cannot become due unless the condition occurs or its nonoccurrence is excused. Unless it has been excused, the non-occurrence of a condition [precedent] discharges the duty when the condition [precedent] can no longer occur. Non–occurrence of a condition [precedent] is not a breach by a party unless he is under a duty that the condition occur.

*True R.R. Assocs., L.P. v. Ames True Temper, Inc.*, 152 A.3d 324, 341 (Pa. Super. 2016) (internal quotation marks, citations, paragraph breaks, and paragraph numbers omitted).

The emails attached to Appellants' complaint, which allegedly set forth the terms of the parties' oral contract, clearly indicate that a condition precedent was bankruptcy court approval. *See* Appellants' Third Amended

---

[5] As Appellants note, "an unfulfilled condition [precedent] does not impede the formation of a valid contract." Appellants' Brief at 21, *quoting Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 139 (Pa. 1999). However, the very next sentence of *Shovel* indicates that the non-occurrence of a condition precedent bars recovery because the plaintiff cannot prove a breach of the contract. *See id.*

Complaint, 5/23/16, at Exhibit E. As part of that email chain, Appellants' own counsel, Robert O. Lampl, stated that the parties needed to seek bankruptcy court approval that same day. ***See id.*** RAP requested the bankruptcy court's approval that same day. ***See id.*** at Exhibit F.

Thereafter, Mr. Ferrone objected to the bankruptcy court's approval of the settlement agreement. As such, the bankruptcy court refused to approve the settlement agreement and the condition precedent was not satisfied. Because a condition precedent to the oral contract was not satisfied, Huntington was not obliged to perform under the oral contract.

Appellants' argument that Huntington's actions also breached the duty of good faith and fair dealing also is without merit. "The implied covenant of good faith and fair dealing attaches to existing contractual obligations; it does not add new contractual duties. In essence, the duty to act in good faith and deal fairly infuses the parties' performance of their express contractual obligations." ***Hanaway v Parkesburg Grp., LP***, 132 A.3d 461, 471-472 (Pa. Super. 2015), *appeal granted on other grounds*, 138 A.3d 608 (Pa. 2016). As Huntington did not have any contractual obligations after the condition precedent was not satisfied, Appellants' complaint failed to adequately plead a breach of contract action if the parties entered into a valid oral contract.

In their second issue, Appellants argue that they adequately pled a promissory estoppel claim.[6] The elements necessary to plead a cause of action for promissory estoppel are: "(1) the promisor made a promise that [it] should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." **V-Tech Servs., Inc. v. Street**, 72 A.3d 270, 276 (Pa. Super. 2013) (citation omitted).

We conclude that Appellants failed to adequately plead a viable promissory estoppel claim. As noted above, one of the elements of a promissory estoppel claim is that the defendant would have reasonably expected that its promise would induce action or inaction. **Id.** at 276. Huntington could not have reasonably expected reliance, as a matter of law, in this case because Appellants acted prior to bankruptcy court approval. The string of emails which allegedly detail Huntington's promises conditions performance on bankruptcy court approval. Since that bankruptcy court approval never materialized, Appellants failed to plead, as a matter of law,

---

[6] Properly construed, Appellants' promissory estoppel claim was pled as an alternative to their breach of contract theory because the promises that allegedly induced Appellants' reliance also formed the basis for their contractual claims. **Cf.** Pa.R.C.P. 1020(c) ("Causes of action and defenses may be [pled] in the alternative."). As Appellants note, "a promissory estoppel claim[ ] is a quasi-contract claim that only exists when there is a determination that no contract was formed." Appellants' Brief at 26; **see Crouse v. Cyclops Indus.**, 745 A.2d 606, 610 (Pa. 2000).

that Huntington reasonably expected Appellants to rely on Huntington's promises prior to bankruptcy court approval.

In their third issue, Appellants argue that they sufficiently pled a claim for fraudulent inducement.

> The elements of fraud in the inducement are as follows: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

***Eigen v. Textron Lycoming Reciprocating Engine Div.***, 874 A.2d 1179, 1185 (Pa. Super. 2005) (internal quotation marks and citation omitted).

Appellants argue that Huntington fraudulently stated that it would sell its bankruptcy claims to Trib-Total Media when it had no intention of selling its claims to Trib-Total Media. According to Appellants, this fraudulent statement led them to enter into the oral settlement agreement. When that settlement agreement was not approved by the bankruptcy court, Appellants aver that they suffered damages.

We again conclude that Appellants' failure to adequately plead justifiable reliance bars relief. Appellants only statement regarding justifiable reliance in their third amended complaint was that "[j]ustifiable reliance is a question of fact." Appellants' Third Amended Complaint, 5/23/16, at 15. This is (an incorrect) statement of law, not a factual

averment. Appellants' third amended complaint has no factual averments regarding their alleged justifiable reliance.

Moreover, even if this statement is construed as a factual averment, Appellants' argument that they justifiably relied upon Huntington's fraudulent statement fails as a matter of law. In ***Drelles v. Manufacturers Life Ins. Co.***, 881 A.2d 822 (Pa. Super. 2005), this Court stated that when alleged reliance is "so unreasonable" a plaintiff's claim of justifiable reliance can be decided as a matter of law. ***Id.*** at 841. In this case, Appellants' alleged reliance is so unreasonable that it fails as a matter of law. Appellants' entire third amended complaint is premised upon the fact that this fraudulent statement was made in relation to negotiations surrounding the settlement agreement. As discussed in detail above, a key component of this settlement agreement was bankruptcy court approval. Any reasonable person would not have relied upon the statements made by Huntington until after bankruptcy court approval was secured. Appellants' alleged reliance prior to bankruptcy court approval is so unreasonable as to fail as a matter of law. Accordingly, Appellants failed to adequately plead a fraudulent inducement claim.

In their final issue, Appellants argue that they sufficiently pled a claim for tortious interference with a contractual relationship. The elements of a tortious interference with a contractual relationship claim are:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2)

- 11 -

purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Maverick Steel Co., L.L.C. v. Dick Corp./Barton Malow*, 54 A.3d 352, 355 (Pa. Super. 2012), *appeal denied*, 65 A.3d 415 (Pa. 2013) (citation and paragraph breaks omitted).

We conclude that Appellants failed to adequately plead the third element of their tortious interference claim. That element "requires a showing that [a] defendant's actions were not privileged [or justified]. Thus, in order to [plead] a cause of action for tortious interference with a contract, a plaintiff must [plead] not only that a defendant acted intentionally to harm the plaintiff, but also that those actions were improper." *Salsgiver Commc'ns, Inc. v. Consol. Commc'ns Holdings, Inc.*, 150 A.3d 957, 966 (Pa. Super. 2016) (internal alteration and citations omitted). In this case, Huntington justifiably chose not to sell its bankruptcy claims to Trib-Total Media because the bankruptcy court did not approve the settlement agreement between Appellants, RAP, and Huntington. Appellants did not plead that Huntington planned to sell its bankruptcy claims to Trib-Total Media whether or not the bankruptcy court approved the settlement agreement. Instead, Appellants pled that Huntington would sell its bankruptcy claims to Trib-Total Media as a part of the settlement

agreement. As discussed in detail above, this settlement agreement required bankruptcy court approval and that approval never occurred.

As this Court stated in *Salsgiver*, in order to plead adequately a tortious interference claim, a plaintiff must plead that the defendant crossed the line from capitalistic self-interested behavior to unfair conduct. *Salsgiver*, 150 A.3d at 964, *citing* Kevin M. Shelley & David W. Oppenheim, *When Conflicting Principles Collide: The Uncharted Boundary Between Fair Competition and Tortious Conduct*, 22 Franchise L.J. 184, 184–185 (2003). Pleading that Huntington failed to sell its bankruptcy claims to Trib-Total Media after the bankruptcy court refused to approve the settlement agreement is simply insufficient to plead that the line was crossed into unfair conduct. Instead, Huntington acted with justification in declining to sell its bankruptcy claims when the settlement agreement was not approved. Accordingly, we conclude that Appellants failed to adequately plead a claim for tortious interference with contractual relations.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2017

- 13 -